**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Miki Eze ONU, Defendant,**

**Craig Washington, Appellant.**

No. 83–2270.

United States Court of Appeals, Fifth Circuit.

April 19, 1984.

Craig A. Washington, pro se.

Mary F. Keller, Asst. Atty. Gen., Austin, Tex., for amicus State of Tex.

James R. Gough, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before RUBIN, JOHNSON and DAVIS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The failure of a lawyer to appear for a trial is not a contempt committed in the presence of the court. Therefore it may be prosecuted only on notice, as prescribed by Fed.R.Cr.P. 42(b), stating the essential facts constituting the criminal contempt charged. In this case, however, the lawyer had adequate notice in fact, suffered no prejudice by the court's failure to give him notice in writing, and did not raise the issue of lack of notice in the trial court. Therefore, we affirm his conviction and sentence to pay a fine equal to the cost of summoning the jury whose attendance he made fruitless.

Craig A. Washington is a member of the Texas bar, admitted to practice in the United States District Court for the Southern District of Texas. An experienced lawyer, he is also a member of the Texas State Senate. He was retained to represent Miki Eze Onu, who had been indicted for conspiracy to violate the firearms statute and for dealing in firearms without a license. Onu, who was in federal custody, had previously been represented by other counsel. When he was arraigned on February 28, the court entered a docket control order scheduling a pretrial conference on April 13 and fixing trial for April 18 at 9:30 a.m. Senator Washington sought to be substituted as counsel on March 10, but the court, in accordance with its usual procedure, refused to approve the replacement until the defendant's consent was obtained. This was filed on April 11, so on April 12, Senator Washington's motion to be substituted as counsel for Onu was granted.

Meanwhile, on April 8, the courtroom deputy spoke with Senator Washington, advising him that the pretrial conference had been rescheduled for April 15 at 9:30 a.m. Washington agreed to this date. On Friday, April 15, Senator Washington did not appear at the pretrial conference, but Melvin Lampley, a lawyer associated with him, came to the conference and stated that

Washington would like a continuance because he was at a legislative session. The court informed Lampley that the Texas statute relieving legislators from attendance at court during legislative sessions [1] was not applicable to federal courts; the case was set for trial on Monday, April 18; and it would be necessary for Washington to communicate with the court.

Senator Washington states in oral argument that he attempted to telephone the court but was unable to reach Chief Judge Singleton. He left a message on a telephone recording device, and Chief Judge Singleton's courtroom deputy returned his telephone call about 4:45 p.m. on Friday. She informed him that his motion for a continuance would be denied and the trial would begin on Monday. Washington states that he then informed her that he would not be present Monday and would file a motion to withdraw as counsel. The same day Washington filed a motion for a continuance asking that the case be postponed until at least thirty days after the adjournment of the regular session of the Texas legislature.

On Monday, at 9:30 a.m., the court held another pretrial conference. Chief Judge Singleton then learned personally for the first time that Washington was not present and did not plan to be. The prosecuting attorneys were present and were ready to proceed. A jury venire of thirty-five persons had been called. Lampley was also present. Instead of the motion that Washington had mentioned in his conversation with the courtroom deputy, Lampley filed a motion on behalf of Washington to withdraw as counsel because Onu had failed to pay the fee due. The motion was denied. The court then telephoned the Chief Deputy United States Marshal and issued an order "to bring the body of Craig Washington before this court instanter."

Later that day the Attorney General of the State of Texas requested that the order to arrest Senator Washington be withdrawn. The court agreed to do so with the understanding that Washington would be present in court on Friday, April 22. On that date, Washington appeared in court. The court reviewed events, as they are set forth above. During the review of the facts, the court noted that Washington had offered no reason for his failure to communicate with the court or to be present for trial other than his status as a state senator and his client's failure to pay the fee. The court then asked Washington whether he had anything to say. Washington offered no explanation or excuse. The court then advised Washington that it had "no alternative but to hold [him] in contempt in accordance with Rule 42(a)" and to punish him summarily for a contempt committed in the actual presence of the court. Washington did not object to the procedure. The court advised him that he would be fined $1,400, the estimated cost of summoning the juror venire. Washington asked only, "To whom should I make the check payable?" The court then entered an order finding that Washington was in contempt of court "in that he failed to appear and represent his client on April 18, 1983, in accordance with the Court's directive," and that the contempt had occurred in its presence.

■ The procedures for summary disposition of contempt charges are reserved " 'for exceptional circumstances,' ... such as acts threatening the judge or disrupting a hearing or obstructing court proceedings." *Harris v. United States,* 382 U.S. 162, 164, 86 S.Ct. 352, 354, 15 L.Ed.2d 240 (1965). "Summary contempt is for 'misbehavior' ... in the 'actual presence of the court.' " *Id., quoting Ex parte Terry,* 128 U.S. 289, 314, 9 S.Ct. 77, 83, 32 L.Ed. 405 (1888). "Rule 42(b) provides the normal procedure." *Harris v. United States, supra,* 382 U.S. at 165, 86 S.Ct. at 355, 15 L.Ed. at 243.

■ A lawyer's failure to attend court is not a contempt in the presence of the

---

**1.** Art. 2168a, V.A.T.S.

court.[2] Although the facts of absence and the scheduling of the hearing are within the knowledge and presence of the court, absence alone is not contempt.[3] Contempt results only from the lack of a good reason for the lawyer's absence. No contempt has been committed if the absence is excusable because it was occasioned by good cause.[4] Ordinarily, therefore, Rule 42(a) may not be used to punish a lawyer for absence from a scheduled court appearance. *Thyssen, Inc. v. S/S Chuen On,* 693 F.2d 1171 (5th Cir.1982).[5]

The requirements of the rule were not inventions of the Advisory Committee. The Supreme Court had long held that a court may proceed summarily only for "direct contempts committed in its presence." *Ex parte Terry,* 128 U.S. 289, 314, 9 S.Ct. 77, 83, 32 L.Ed. 405, 412 (1888). *See also Harris v. United States,* 382 U.S. 162, 164–167, 86 S.Ct. 352, 354–355, 15 L.Ed.2d 240, 242–244 (1965). Rule 42(b) thus codifies prior doctrine limiting the summary contempt power to cases in which the contempt is committed directly under the eye or within the view of the court. *United States v. Wilson,* 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186, (1975).[6]

The United States Attorney seeks to uphold the court's action on the basis that a

hearing was provided and Washington had in fact received notice of its purpose. But actual notice does not satisfy the rule. Rule 42(b) explicitly requires: "The notice *shall* state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and *shall* state the essential facts constituting the criminal contempt charged *and describe it as such.* The notice *shall* be given orally by the judge in open court in the presence of the defendant or ... by an order to show cause or an order of arrest." (Emphasis added.) Thus, "the notice also serves as the charge." 8B Moore's Federal Practice, ¶ 42.04 (2d ed. 1976).

■ But rules are not designed to be enforced mechanically when no prejudice results from their nonobservance. In *United States v. United Mine Workers,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947), the Court held that Rule 42(b) does not require rigorous and formalistic application. The defendants in that case had received notice of contempt proceedings against them but were not formally apprised of their criminal nature. The Court found that the defendants indeed had actual knowledge of the real nature of the proceedings, notwithstanding the lower

---

**2.** *Thyssen v. S/S Chuen On,* 693 F.2d 1171 (5th Cir.1982); *In re Allis,* 531 F.2d 1391 (9th Cir.), *cert. denied,* 429 U.S. 900, 97 S.Ct. 267, 50 L.Ed.2d 185 (1976) (tardiness); *United States v. Delahanty,* 488 F.2d 396 (6th Cir.1973) (failure to appear for pretrial conference); Contra: *In re Niblack,* 476 F.2d 930 (D.C.Cir.), *cert. denied,* 414 U.S. 909, 94 S.Ct. 229, 38 L.Ed.2d 147 (1973) (distinguishing *Klein* [*v. U.S.,* 151 F.2d 286 (C.A. D.C.1945) ], and finding that the lawyer's disobedience to an order that he be in court at a specified hour subject him to discipline pursuant to Rule 42(a)); *Sykes v. United States,* 444 F.2d 928 (D.C.Cir.1971); See Annot. 97 A.L.R.2d 41 (1964).

**3.** *Thyssen, Inc. v. S/S Chuen On, supra,* n. 2, 693 F.2d 1171 (5th Cir.1982); *In re Allis, supra* n. 2, 531 F.2d at 1392.

**4.** *In re Monroe,* 532 F.2d 424, 425 (5th Cir.1976); *In re Marshall,* 423 F.2d 1130 (5th Cir.1970); *In re Adams,* 505 F.2d 949 (5th Cir.1974).

**5.** In *Thyssen, supra,* n. 2, we said:

It is at least possible that in some instances of absence or tardiness the reason may be known to the court. Counsel may advise the court that he will not appear for a certain reason, or he may advise the court why he was absent. In such instances, it may be that all the procedures of Rule 42(b) need not be followed.

Despite this observation, we consider ourselves bound in this case by the requirements of Rule 42(b).

**6.** *See also Johnson v. Mississippi,* 403 U.S. 212, 91 S.Ct. 1778, 29 L.Ed.2d 423 (1971); *United States v. Powers,* 629 F.2d 619, 625 (9th Cir. 1980); *In re Chaplain,* 621 F.2d 1272, 1275 (4th Cir.1980), *cert. denied,* 449 U.S. 834, 101 S.Ct. 106, 66 L.Ed.2d 40 (1980); *United States v. Peterson,* 456 F.2d 1135, 1139 (10th Cir.1972); *In re Lamson,* 468 F.2d 551 (1st Cir.1972); *United States v. Willett,* 432 F.2d 202 (4th Cir.1970); *Matusow v. United States,* 229 F.2d 335 (5th Cir.1956); *Compare In re Gates,* 478 F.2d 998 (D.C.Cir.1973); *In re Niblack,* 476 F.2d 930 (D.C. Cir.1973), *cert. denied,* 414 U.S. 909, 94 S.Ct. 229, 38 L.Ed.2d 147 (1973).

court's procedural oversight. The defendants had failed to show that non-observance of the rule substantially prejudiced them. Therefore, the Court upheld the contempt judgment. The circuit courts have since adhered to the doctrine that, absent prejudice or unfairness, failure to follow Rule 42(b) will not result in reversal of a contempt judgment. *Hopkins v. Jarvis,* 648 F.2d 981 (5th Cir.1981); *F.T.C. v. Gladstone,* 450 F.2d 913 (5th Cir.1971); *Wolfe v. Coleman,* 681 F.2d 1302 (11th Cir.1982).

■ The court did not hold Washington in contempt instanter. He did have notice in fact and an opportunity to be heard. Additionally he had the procedural protections sought to be assured by Rule 42(b). The court read Washington the essential facts constituting criminal contempt and informed him that the charge was criminal contempt. While the court referred to Rule 42(a) as the source of its authority, the defendant was fully informed of the essential elements of the charge against him and its criminal nature.

Appearing as amicus curiae, the State of Texas urges that the failure of a federal court to accord a continuance to a lawyer who is a state legislator prevents the uninterrupted performance of the legislator's duties. It relies on *Tenny v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), which held state legislators immune to civil suit. The rationale of *Tenny* is that immunity to suit enables the people's elected representatives "to execute the functions of their office without fear of prosecutions, civil or criminal." [7]

Requiring a lawyer to adhere to the proper orders of a federal court does not threaten legislative integrity. Senator Washington was not called suddenly to his legislative duties, and the federal case was not precipitately assigned for trial. From the time he sought to enter an appearance in the case, in March, Washington knew or should have known of the trial date and of the scheduled, regular legislative session.

He had ample time to communicate with the court in person and to seek an alternate trial date. At 10:00 a.m. on April 15, Chief Judge Singleton asked Washington's associate to have Washington communicate with him. The record indicates that Washington failed to do so. In arguing his case to this court, Washington asserts that he made an effort to communicate with the judge but he failed to suggest that extenuating circumstance to the trial court. Chief Judge Singleton did not manifest indifference to the interests of the State or to the duties of Washington as a legislator. At the hearing on April 22, he said:

> Well, I will say, Mr. Washington, in my relationships with you as an attorney, I was surprised that you did not contact me and we could have probably worked something out. I was a little surprised that you did not contact me. I was a little surprised that you waited until the last hour to file the motion based upon article 21.88(A). Of course, that article is not applicable to federal courts as you, I'm certain, know. But we could have at least attempted to work something out.

> But I did not have any idea, from what the records indicated and from what I knew about the case, but that you were going to try the case on Monday, April the 18th. I did not know that. And I did not know to the contrary, as a matter of fact, until I got here on Monday morning, ready to pick a jury.

> Mr. Washington: Yes. I take full responsibility, Your Honor. But I was never advised that I should call this court on Friday. The only reason that I called the court was because Miss Corona [the courtroom deputy] called my office in Houston and they advised me in Austin. And I left three messages on Miss Corona's answering service. We ultimately did speak, and it was late in the afternoon Friday.

> But as I say, I take full responsibility, but I was never advised that I should call this court. I would have done so.

---

7.  341 U.S. at 374, 71 S.Ct. at 787, 95 L.Ed. at 1025. The state argues against the arrest of a state senator while performing his duty. Washington was not arrested and that issue is not before us.

The Court: Well, I think you obviously should take full responsibility because you were the attorney of record.

But as I say, I repeat, it seems to me that I would have expected you to file such a motion or to talk to me about it at some time prior to Friday because you knew that the case was set for Monday, April the 18th, and had known it ever since you accepted employment.

Mr. Washington: Yes, sir.

Under these circumstances, the problem was created not by Senator Washington's attention to his state legislative duties but his carelessness concerning his responsibilities as a member of the bar of the federal court. This resulted in a panel of prospective jurors being needlessly summoned to their great personal inconvenience and in expense that could have been averted by simple diligence.

For these reasons the judgment of contempt is AFFIRMED.