**REVISED, July 20, 1998**

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

_____

No. 97-50341
_____

PATTI FAIN SMITH,

                    Plaintiff - Appellee,

versus

JEAN S SMITH; ROBERT PAT SMITH, JR.; TRI-COAST
LIMITED PARTNERSHIP,

                    Defendants

JEAN S SMITH

                    Defendant - Appellant.

_____

No. 97-50575
_____

PATTI FAIN SMITH,

                    Plaintiff - Appellee,

versus

JEAN S SMITH; ROBERT PAT SMITH, JR.; TRI-COAST
LIMITED PARTNERSHIP,

                    Defendants - Appellants.

Appeal from the United States District Court
for the Western District of Texas

June 29, 1998

Before KING, EMILIO M. GARZA, and DeMOSS, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

In appeal No. 97-50341, Jean S. Smith ("Defendant Smith") appeals the district court's judgment finding her in criminal contempt and imposing a 180-day jail term. In the consolidated appeal, No. 97-50575, Jean Smith and her son, Robert P. Smith, Jr. (collectively "defendants"), appeal the district court's entry of a default judgment against them in a related case. We reverse the district court's finding of criminal contempt in appeal No. 97-50341, and remand to the district court for further proceedings if necessary. We affirm the district court's entry of default judgment in appeal No. 97-50575.

I

Although the underlying facts in these two consolidated appeals are not greatly disputed, this is the third time that we have seen these same parties on appeal and the second time that we have been asked to review the district court's finding of contempt against Defendant Smith. *See Smith v. Smith*, No. 96-50569, slip op. at 1 (5th Cir. Dec. 3, 1996) (*Smith* I) (reversing criminal contempt finding and affirming civil contempt finding); *Smith v.*

-2-

*Smith*, No. 96-50494, slip op. at 1 (5th Cir. June 30, 1997) (*Smith* II) (affirming jury verdict in favor of plaintiffs). In order to understand the district court's obvious and understandable frustration with the conduct of the defendants during the course of this litigation))particularly Defendant Smith's conduct))a full understanding of the procedural history is necessary. As we noted in the second appeal, "this lawsuit involves a family sadly torn apart." *Smith* II, slip op. at 1.

These consolidated appeals arise out of two separate fraud suits brought by the plaintiffs, Patti Fain Smith ("Plaintiff Smith") and her late husband W. Blake Smith, against their former daughter-in-law, Jean Smith, and their grandson Robert P. Smith, Jr. The first fraud suit ("1994 suit") alleged that the defendants had fraudulently convinced the plaintiffs to transfer most of their assets to the defendants. Following a jury trial in this suit before the Honorable Walter S. Smith, Jr., Plaintiff Smith and her husband, now deceased, prevailed on the merits and received a substantial dollar award. We affirmed this verdict in an unpublished decision, *see Smith* II, slip op. at 4-8, and the jury verdict is not directly the subject of either of these appeals.

Plaintiff Smith's efforts to collect the jury verdict in the 1994 suit, however, gave rise to the events that triggered appeal No. 97-50341. During the extended postjudgment proceedings for the 1994 suit, the district court has now twice held Defendant Smith in

criminal contempt of court. *See Smith* I, slip op. at 1. In the first contempt proceedings held on July 26, 1996, the district court held Defendant Smith in both civil and criminal contempt for failing to appear and give testimony at an oral deposition as ordered by the court.[1] The district court ordered that Defendant Smith be held in the custody of the U.S. Marshal for a period of ten days (*i.e.,* the criminal contempt portion) and that she be incarcerated until she purged herself from contempt by giving her deposition (*i.e.,* the civil contempt portion). Defendant Smith immediately filed a notice of appeal to our court and petitioned for a stay of the district court's order pending appeal. We granted a stay of the district court's order, and on December 3, 1996, after considering the merits of her appeal, summarily reversed and vacated the criminal portion of the district court's

---

[1] The district court had issued an order on June 12, 1996, compelling Defendant Smith to appear at an oral deposition on June 21, 1996. Defendant Smith declared bankruptcy on June 19, 1996, and failed to appear at her scheduled deposition. The district court subsequently issued Defendant Smith an order to show cause why she should not be held in contempt of court. This order did not specify that Defendant Smith could be held in criminal contempt. Following the show cause hearing on July 26, 1996, the district court rejected Defendant Smith's argument that her declaration of bankruptcy gave her an automatic stay of the court's order to appear for the deposition. *See Smith v. Smith*, No. W-94-CA-366, slip op. at 4-6 (W.D. Tex. July 26, 1996). The district court explained that Defendant Smith "chose not to attend the deposition without requesting that this Court stay or postpone the deposition or for any clarification of the order [and that] her filing for bankruptcy only stayed the proceedings against her personally, not against her in her representative capacity." *Id.* at 6.

contempt order because the court failed to give adequate notice or follow the procedures set forth in *FDIC v. LeGrand*, 43 F.3d 163, 169-70 (5th Cir. 1995). *See Smith* I, slip op. at 1. At the same time, we affirmed the civil portion of the contempt order and "remanded to the district court for enforcement." *Id.* Our mandate issued on December 30, 1996.

In between the issuance of our opinion in *Smith* I and the issuance of our mandate, the parties continued to file a flurry of motions in the district court, and the plaintiffs continued to seek another order compelling Defendant Smith to submit to an oral deposition and produce documents on the status of her finances. Instead of issuing an arrest warrant and incarcerating Defendant Smith until she had submitted to a deposition (which would have been consistent with our opinion and mandate in *Smith* I), the district court, on December 17, 1996, issued another order compelling Defendant Smith to submit to an oral deposition and to produce documents at opposing counsel's law firm on December 30, 1996.[2] Although counsel for Defendant Smith appeared on the

_____

[2] While her first contempt was pending on appeal in *Smith* I, Defendant Smith filed several motions in the district court to stay enforcement of further contempt proceedings until she was better able to cope with the stress and her rapidly deteriorating mental health; the district court denied each of these motions. During this time, the district court also granted the plaintiffs' motion for a mental examination of Defendant Smith to determine whether she was mentally capable of appearing and defending herself at a show cause hearing that the district court had scheduled for November 25, 1996. The doctor who conducted the examination concluded that Defendant Smith was mentally capable and competent

scheduled date, Defendant Smith did not.  Counsel for Defendant Smith acknowledged on the record that he transmitted to his client the district court's order that she appear for a deposition on December 30, 1996, and that she had gathered documents responsive to this order. Counsel for Defendant Smith also provided some explanation (both at the time of the scheduled deposition and later in response to the plaintiffs' motion for a show cause order) as to why Defendant Smith did not appear at the December 30, 1996 scheduled deposition.  Counsel for Defendant Smith alleged that she had checked in for her flight on December 29, 1996, to come to Waco for the deposition, but that she missed her flight when a piece of her carry-on luggage was stolen (or misplaced).  According to her counsel, she then became very upset, someone called the airport police and her psychiatrist, and she was taken to the hospital, thereby causing her to miss her scheduled December 30 deposition. While Plaintiff Smith vigorously disputes this characterization of the incident, the district court never made a factual finding as to the reason for Defendant Smith's absence, and we express no opinion

---

to appear.  The scheduled show cause hearing did not occur, however, because the plaintiffs sought and the district court granted a continuance.  On November 21, 1996, the district court then issued an order compelling Defendant Smith to produce documents and submit to an oral deposition on December 9, 1996. Defendant Smith failed to appear for this deposition, claiming that she was hospitalized following an overdose of psychiatric antidepressant medications.  Defendant Smith's failure to appear at the December 9, 1996 deposition led the plaintiffs to seek another order compelling Defendant Smith to submit to an oral deposition. The district court issued this order on December 17, 1996.

as to the veracity of her explanation, or indeed, whether it would in any case justify her nonappearance.

On December 31, 1996, the plaintiffs filed a motion seeking a show cause order as to why Defendant Smith should not be held in civil and criminal contempt. Defendant Smith responded to the plaintiffs' motion by further explaining the reasons that she missed the December 30 deposition and attaching copies of her boarding pass and the airport incident report to substantiate her explanation. On February 13, 1997, the district court issued a show cause order directing Defendant Smith to appear and show cause on March 17, 1997, why she should not be held in criminal and civil contempt. Although her counsel again appeared on the scheduled date, Defendant Smith failed to appear for the show cause hearing. The district court instructed the court security officer to call Defendant Smith's name three times in the hallway. After receiving no answer, the district court stated as follows: "Apparently, she has not appeared. Then the Court will order her in contempt of court for not appearing and for any other reason that we can think of." Counsel for Defendant Smith stipulated on the record that he received a copy of the court's show cause order; he refused, however, to answer opposing counsel's question as to whether he mailed Defendant Smith a copy of the order. The district court then adjourned the hearing without making any findings of fact or conclusions of law.

Subsequently, on March 31, 1996, without any further hearings

or communication with either party, the district court *sua sponte* issued an order holding Defendant Smith in criminal contempt pursuant to 18 U.S.C. § 401(1).[3]  The court based its finding of criminal contempt on the fact that Defendant Smith "has refused and continues to refuse to comply with the terms of this Court's Orders dated December 30, 1996 and February 13, 1997."[4]  The district court commanded the United States Marshal to arrest Defendant Smith and incarcerate her for a period of 180 days.  The court further ordered that the matter be referred to the Office of the United States Attorney for prosecution pursuant to 18 U.S.C. §§ 401(3) and 402.  The court's judgment was entered on the civil docket for the 1994 suit on April 1, 1997.  Defendant Smith filed her notice of appeal 28 days later.[5]

Appeal No. 97-50575 also arises from Plaintiff Smith's attempts to collect the jury verdict from the 1994 suit.  In order

---

[3]     18 U.S.C. § 401(1) states that "[a] court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as))(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice."

[4]     December 30, 1996 was actually the date of Defendant Smith's court-ordered deposition, not the date of the court's order.  The court's order compelling the deposition was issued December 17, 1996.  Because no order was issued on December 30, we assume that the district court meant to reference the December 17 order.

[5]     At the time this case was submitted at oral argument, Defendant Smith had not yet been incarcerated, and the U.S. Attorney had not yet acted on the district court's referral.  On April 29, 1998, however, Defendant Smith was arrested by the U.S. Marshal's Service and has been in custody since that time.

-8-

to do so, Plaintiff Smith and her husband filed a second fraud suit against the defendants in July 1996 ("1996 suit"), alleging that the defendants had fraudulently transferred substantially all of their property to a spendthrift trust in anticipation of the plaintiffs' 1994 suit. On January 27 and 28, 1997, the defendants failed to appear for scheduled depositions in connection with the 1996 suit. The district court subsequently entered an order requiring defendants to appear for depositions on February 20 and 21, 1997; yet again, the defendants failed to appear. In June 1997, in light of the defendants's failure to comply with the discovery orders in the 1996 suit, and after the events stemming from the 1994 suit had transpired, the district court entered default judgment in the 1996 suit pursuant to FED. R. CIV. P. 37(b)(2)(C). The default judgment ordered that certain fraudulent transfers be rescinded, that a constructive trust and lien be imposed in favor of the plaintiffs, and that exemplary damages in the amount of $500,000 be awarded. The defendants timely appealed from this default judgment.

## IIA

In appeal No. 97-50341, Defendant Smith's challenges the district court's finding of criminal contempt in the postjudgment proceedings in the 1994 suit. Because Defendant Smith filed her notice of appeal 28 days after the court's entry of the criminal contempt judgment, we must first decide whether her notice of appeal was timely. The filing of a timely notice of appeal is

mandatory and jurisdictional. *See Smith v. Barry*, 502 U.S. 244, 248, 112 S. Ct. 678, 682, 116 L. Ed. 2d 678 (1992); *Harcon Barge Co. v. D & G Boat Rentals, Inc.*, 746 F.2d 278, 283 n.2 (5th Cir. 1984). FED. R. APP. P. 4(b) states that the defendant in a criminal case must file a notice of appeal within 10 days after entry of the judgment; Rule 4(a) provides that a party in a civil case must file a notice of appeal within 30 days after entry of the judgment. *See* FED. R. APP. P. 4(a)-(b).

Plaintiff Smith argues that the 10-day time limit of FED. R. APP. P. 4(b) applies because the district court held Defendant Smith in *criminal* contempt. Defendant Smith concedes that she was held in criminal contempt,[6] but argues that this was merely an "order" in her underlying civil "case" and that we therefore should apply the 30-day rule of Rule 4(a). As Defendant Smith correctly points out, this issue raises a question of first impression in our Court))namely, which time limit applies for the notice of appeal for a criminal contempt order issued in a civil case. Nonetheless, due to the unusual circumstances surrounding the entry of the

---

[6]     Both parties (and the district court) agree that Defendant Smith's penalty is a criminal, rather than a civil, penalty. The district court's order states that Defendant Smith is to be incarcerated for 180 days; it is unconditional and there is no way in which she can purge this penalty. As such, her penalty is undoubtedly a criminal sanction. *See LeGrand*, 43 F.3d at 168-69 (holding that absolute penalty intended to punish is viewed as criminal penalty); *In re Rumaker*, 646 F.2d 870 (5th Cir. 1980) (holding that noncoercive, unconditional, and noncompensatory penalty is criminal contempt).

judgment in this case, we ultimately need not answer the question of whether Rule 4(a) or 4(b) applies.  Under the plain language of the rules, regardless of which rule applies to Defendant Smith's appeal, her notice of appeal was timely.

Of primary importance to the issue at hand is the fact that the district court entered its criminal contempt order on the existing *civil docket* for the 1994 suit and consistently has docketed all of the motions and orders regarding the criminal contempt on the civil docket for the 1994 suit.  The court's entry of the judgment on the civil docket is consistent with the federal rules and requirements for entering civil judgments.  *See* FED. R. APP. P. 4(a) ("A judgment or order is entered within the meaning of this Rule 4(a) when it is entered in compliance with Rules 58 and 79(a) of the Federal Rules of Civil Procedure."); FED. R. CIV. P. 79(a) ("The clerk shall keep a book known as 'civil docket' of such form and style as may be prescribed by the Director of the Administrative Office of the United States Courts . . . and shall enter therein each civil action to which these rules are made applicable."); *see also Harcon Barge*, 746 F.2d at 281-82 (taking judicial notice of the uniform practice of the district courts of the Fifth Circuit for entering civil judgments).

The court's entry of the criminal contempt judgment on the civil docket, however, is not consistent (at least for purposes of determining the timeliness of the notice of appeal) with the

-11-

requirements for entering criminal judgments.  *See* FED. R. APP. P.
4(b); FED. R. CRIM. P. 55.  FED. R. APP. P. 4(b) states that the 10-
day time period for filing a notice of appeal begins to run from
"entry . . . of the judgment."  The rule further clarifies that
"[a] judgment or order is *entered* within the meaning of [Rule 4(b)]
when it is entered on the *criminal docket*."  FED. R. APP. P. 4(b)
(emphasis added).[7]  Thus, the 10-day time period of Rule 4(b) does
not begin to run until the order is entered on the criminal docket.
*See United States v. Chagra*, 735 F.2d 870, 872-73 (5th Cir. 1984).

The issue we face, therefore, assuming that FED. R. APP. P.
4(b) applies, is whether Defendant Smith's notice of appeal was
timely filed because the district court erroneously entered the
judgment on the civil docket.  In *United States v. Thoreen*, 653

---

[7]  FED. R. CRIM. P. 55 states that "[t]he clerk of the
district court . . . shall keep records in criminal proceedings in
such form as the Director of the Administrative Office of the
United States Courts may prescribe.  The clerk shall enter in the
records each order or judgment of the court and the date of such
entry is made."  FED. R. CRIM. P. 55.  The Director of the
Administrative Office has provided that:

> Each order or judgment of the court is required to be
> entered in the criminal docket, and the entry must show
> the date entry is made. FED. R. CRIM. P. 55.  A judgment
> or order is deemed to be entered for purposes of
> computing time for appeal when it is entered in the
> criminal docket. FED. R. APP. P. 4(b).

Clerks   Manual   -   United   States   District   Courts   §   8.12
(Administrative Office of the United States Courts, 1993); *see also*
*United States v. Chagra*, 735 F.2d 870, 873 & n.6 (5th Cir. 1984)
(discussing requirements of FED. R. CRIM. P. 55 and FED. R. APP. P.
4(b)).

F.2d 1332, 1337-38 (9th Cir. 1981), the Ninth Circuit faced this precise issue. In that case, the district court held an attorney in criminal contempt and entered the order on the civil docket, as the underlying action had been consistently docketed as a civil matter. The attorney filed his notice of appeal 11 days after the district court entered the judgment on the civil docket. In the court of appeals, the attorney "argue[d] that he filed timely because the case was docketed consistently as a civil matter and the order has never been entered on a criminal docket." *Id.* The court agreed, explaining that "[w]e agree with the government that the contempt proceeding was criminal, but hold that Thoreen's appeal was timely because the clerk did not enter the judgment on the criminal docket. The ten-day period had not begun to run." *Id.* at 1338.

Here, it is undisputed that the district court never entered the contempt order on a criminal docket and, in fact, that no criminal docket was ever opened for Defendant Smith's criminal contempt. "In the face of specific provisions of FED. R. APP. P. 4(b), we are unable to agree with the [plaintiff's] contention" that the 10-day time period begins to run before the district court enters the judgment on the criminal docket. *See Chagra*, 735 F.2d at 873; *cf. United States v. Doyle*, 854 F.2d 771, 772 (5th Cir. 1988) (holding that under Rule 4(a) 30-day period begins to run from the date of entry of the judgment on the civil docket).

-13-

Consequently, for purposes of determining the timeliness of the notice of appeal under Rule 4(b), the judgment was never "entered," and the 10-day time period has not run. *See Thoreen*, 653 F.2d 1332, 1337-38 (9th Cir. 1981) (concluding that appeal was timely because criminal contempt order was docketed on civil docket instead of criminal docket); *Chagra*, 735 F.2d at 873 (measuring timeliness from the date that judgment is entered on the criminal docket).

Thus, assuming *arguendo* that FED. R. APP. P. 4(b) applies to the district court's order of criminal contempt arising in the underlying civil case, Defendant Smith's notice of appeal was nonetheless timely filed. Alternatively, the notice of appeal was timely under the 30-day time limit of FED. R. APP. P. 4(a) because it was filed 28 days after entry of the judgment on the civil docket. *See Thoreen*, 653 F.2d at 1338 ("Alternatively, the appeal is timely under Rule 4(a) because it was filed within 30 days of the entry of the judgment on the civil docket."). In either case, therefore, under the plain language of the rules, Defendant Smith's notice of appeal was timely, and we have jurisdiction to consider the merits of the district court's judgment holding her in criminal contempt.[8]

---

[8] Defendant Smith does not challenge the validity of the criminal contempt judgment on the grounds that district court entered the judgment on the civil, rather than the criminal, docket. Consequently, we express no opinion on this question. *Cf. Gregory v. Depte*, 896 F.2d 31, 35-36 (3d Cir. 1990) (vacating

-14-

We review the district court's contempt order for abuse of discretion, and its factual findings under the clearly erroneous standard. *See LeGrand*, 43 F.3d at 168-69; *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 46-47 (5th Cir. 1992). Defendant Smith argues that the district court erred by finding her in criminal contempt through the summary procedures of Fed. R. Crim. P. 42(a) because her contempt was not committed in the actual presence of the court. Plaintiff Smith concedes that the district court failed to follow the procedures required by Fed. R. Crim. P. 42(b), but argues that compliance with Rule 42(b) was unnecessary and that the court correctly prosecuted this contempt summarily under Rule 42(a). *See United States v. Nunez*, 801 F.2d 1260, 1263 (11th Cir. 1986) (noting that "Rule 42 outlines the two alternative procedures to be used [for criminal contempt], depending on whether the contemptuous behavior occurred in the presence of the court, or not"). Thus, properly framed, the only remaining question for this appeal is whether the district court erred in utilizing the summary procedures of Rule 42(a) instead of providing the extended

---

sanction and remanding to the district court "to take all appropriate steps" because it was unclear whether sanction was civil or criminal and order "ha[d] never been entered in the criminal docket of the district court as required by Fed. R. App. P. 4(b)"). Moreover, we note in passing that Fed. R. App. P. 4(b) specifies that it is only "within the meaning of this subdivision [*i.e.,* for purposes of computing the timeliness of the notice of appeal]" that a judgment must be entered on the criminal docket in order to be "entered."

protections of Rule 42(b).[9]

Rule 42(a) states as follows:

**(a) Summary Disposition.** A criminal contempt may be punished summarily if the judge certifies that the judge saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

FED. R. CRIM. P. 42(a). The district court, therefore, may utilize the summary procedures of Rule 42(a) only when the judge certifies that the judge "saw or heard the conduct constituting the contempt" and that the defendant's contempt was committed "in the actual presence of the court." The power summarily to convict and punish for contempt of court under Rule 42(a) "rests on the proposition that a hearing to determine guilt of contempt is not necessary when contumacious conduct occurs in the actual presence of a judge who observes it, and when immediate action is required to preserve order in the proceedings and appropriate respect for the tribunal." *In re Chaplain*, 621 F.2d 1272, 1275 (4th Cir. 1980).

---

[9] FED. R. CRIM. P. 42(b) states in pertinent part:

A criminal contempt except as provided in [Rule 42(a)] shall be prosecuted on notice. . . . The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to a trial by jury in any case in which an act of Congress so provides. . . . If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent.

Here, the district court's order demonstrates that Defendant Smith was held in criminal contempt for failing to appear for her deposition (scheduled for December 30, 1996) and for failing to appear for her show cause hearing (scheduled for March 17, 1997), thereby violating the district court's December 17th and February 13th orders to do so. Defendant Smith argues that because the contempt was based on her absence from the deposition and hearing, she could not be held in criminal contempt under the summary procedures of FED. R. CRIM. P. 42(a). We agree.

In *United States v. Onu*, 730 F.2d 253, 255-56 (5th Cir. 1984), we explained that "[t]he failure of a lawyer to appear for a trial is not a contempt committed in the presence of the court. Therefore it may be prosecuted only on notice as prescribed by FED. R. CRIM. P. 42(b)." *See also United States v. Nunez*, 801 F.2d 1260, 1264 (11th Cir. 1986) ("[T]he majority of circuits which have considered the issue have concluded that counsel's tardiness or absence cannot be characterized as contempt in the presence of the court."). "[T]he contempt consists not in the absence from the courtroom but in the reasons for the attorney's presence elsewhere, and the presence elsewhere was, of course, not in the actual presence of the Court." *In re Allis*, 531 F.2d 1391, 1392 (9th Cir. 1976); *see also Thyssen, Inc. v. S/S Chuen On*, 693 F.2d 1171, 1175 (5th Cir. 1982) ("We adopt the *Allis* approach and hold that ordinarily Rule 42(a) may not be used to punish an attorney for a

-17-

contempt consisting of lateness or absence from a scheduled court appearance."); *United States v. Delahanty*, 488 F.2d 396, 398 (6th Cir. 1973) ("We find that this matter should not have been dealt with summarily. While the absence of Appellants was obvious to the Court, the reasons for their absence were not.").

In *Thyssen*, we noted that there may be a "hypothetical exception" to the general rule that absence can be punished only through Rule 42(b) when the reason for the absence or tardiness is "known to the court." *Thyssen*, 693 F.2d at 1175. We explained that this could occur because "[c]ounsel may advise the court that he will not appear for a certain reason, or he may advise the court why he was absent." *Id.; see also United States v. Baldwin*, 770 F.2d 1550, 1555 (11th Cir. 1985) (upholding use of summary contempt procedures where the attorney, prior to his absence, "told the court why he would not be present on April 17, and that he was refusing to obey a court order"). While *Onu* calls into question whether such a "hypothetical exception" exists, *see Onu*, 730 F.2d 256 n.5 (quoting same language from *Thyssen* and explaining that "[d]espite this observation, we consider ourselves bound in this case by the requirements of Rule 42(b)"), even if such an exception does remain, it would not apply to the case at hand.

Here, as in *Thyssen*, "[w]e need not now explore all the potential contours of this hypothetical exception . . . for here, so far as the record shows, the contempt order was rendered before

-18-

any explanation of the absence or failure to contact the court was made known to the court . . . and, indeed, in [the defendant's] absence." *Thyssen*, 693 F.2d at 1175; *see also Baldwin*, 770 F.2d at 1554 ("Because summary contempt allows the court to punish the contemnor without benefit of numerous procedural protections, we have determined that it is only appropriate in narrowly defined circumstances."); *In re Oliver*, 333 U.S. 257, 275-76, 68 S. Ct. 499, 508-09, 92 L. Ed. 682 (1948) (holding that if the judge must depend upon others for knowledge of the essential elements, due process requires notice and a fair hearing).

Plaintiff Smith argues that "the court already knew the reason for [Defendant Smith's] non-appearance, *i.e.* that she was willfully and intentionally attempting to obstruct the administration of justice by preventing the Plaintiffs from performing meaningful post-judgment discovery." While it is certainly possibly that this is the case))and there is no doubt that Plaintiff Smith *believes* this to be true, neither the district court nor this Court may make such a conclusion from the record. Adopting plaintiff's standard for when the court can dispense with the heightened procedural requirements of Rule 42(b) and punish summarily under Rule 42(a) would eviscerate the requirement that the contempt occur in the "actual presence of the court." FED. R. CRIM. P. 42(a); *see also In re Oliver*, 333 U.S. at 275-76, 68 S. Ct. at 508-09 ("The narrow exception to these due process requirements includes only charges

-19-

of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent demoralization of the court's authority . . . before the public.") (internal quotations omitted).

In addition, the district court made no findings of fact as to the reasons for Defendant Smith's absences and Plaintiff Smith presented no direct evidence to support her assertions (other than Defendant Smith's demonstrated absence). Although Plaintiff Smith strongly objects to Defendant Smith's version of events, Defendant Smith did present some explanation for her absence (at least with regards to the December 30, 1996 deposition). *See supra* at 4-5. "'If an explanation for tardiness is made which is inconsistent with wilful disobedience, a hearing must be held' . . . ." *Thyssen*, 693 F.2d at 1175 n.6 (quoting *In re Allis*, 531 F.2d at 1392). As we stated in *Onu*, "[t]he procedures for summary disposition of contempt charges are reserved 'for exceptional circumstances, . . . such as acts threatening the judge or disrupting a hearing or obstructing court proceedings.'" *Onu*, 730 F.2d at 255 (quoting *Harris v. United States*, 382 U.S. 162, 164, 86 S. Ct. 352, 354, 15 L. Ed. 2d 240 (1965)) (alterations in original).

We, of course, recognize the district court's need to preserve

the integrity of its court. The district court undoubtedly could hold Defendant Smith in civil contempt for her failure to comply with the court's orders to appear, *see LeGrand*, 43 F.3d at 170, or in criminal contempt following an adequate hearing pursuant to FED. R. CRIM. P. 42(b).[10] *See, e.g., LeGrand*, 43 F.3d at 169 (holding that Rule 42(b) requires appointment of independent prosecutor); *American Airlines, Inc. v. Allied Pilots Ass'n*, 968 F.2d 523, 531 (5th Cir. 1992) (explaining that under Rule 42(b) "the judge may 'not prosecute the contempt proceeding and at the same time act as Judge'") (quoting *In re Davidson*, 908 F.2d 1249, 1251 (5th Cir. 1990)). If the district court intended to punish Defendant Smith's contempt immediately, the court could have issued a bench warrant for her arrest and had the United States Marshals bring her before the court for an appropriate hearing.

Thus, although we do not in any respect condone Defendant Smith's behavior, her failure to appear (i.e., her absence) is not contempt "committed in the actual presence of the court" such that she can be *summarily* held in *criminal* contempt. Notwithstanding our reversal of the criminal penalty, we do not foreclose further

---

[10]     Defendant Smith does not argue that FED. R. CRIM. P. 42(b) prohibits Judge Smith from presiding at a contempt hearing on remand. *Cf.* FED. R. CRIM. P. 42(b) ("If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at trial or hearing except with the defendant's consent."); *see also Thyssen*, 693 F.2d at 1176 n.7 (raising the issue as to whether absence from a hearing constitutes "disrespect to the judge" requiring disqualification under Rule 42(b)). Accordingly, we express no opinion on this question.

proceedings below, either civil or criminal, in respect to the incidents in question or any future incidents should they arise. *See Thyssen*, 693 F.2d at 1176; *Nunez*, 801 F.2d 1265. The district court has full authority to enforce its orders and preserve the integrity of the court.[11]

IV

In the consolidated appeal (No. 97-50575), the defendants ask this Court to reverse the district court's imposition of the default judgment in the 1996 suit. We review the court's entry of default judgment for an abuse of discretion. *See National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642, 96 S. Ct. 2778, 2780, 49 L. Ed. 2d 747 (1976); *Batson v. Neal Spelce Assocs., Inc.*, 805 F.2d 546, 548 (5th Cir. 1986). With regards to the 1996 suit, it is undisputed that the defendants failed to appear for depositions scheduled for January 27 and 28, 1997, and that they failed to comply with the district court's order setting depositions for February 20 and 21, 1997. In addition, both parties agree that these were the only discovery orders that the

---

[11]    Given our conclusion that the district court erred in not conducting a hearing and taking evidence from Defendant Smith pursuant to FED. R. CRIM. P. 42(b), we need not reach Defendant Smith's remaining argument that the district court's summary procedures violated FED. R. CRIM. P. 43(a). *See* FED. R. CRIM. P. 43(a)-(c) (setting forth requirement that the defendant be present at every stage of trial unless presence has been waived); *cf. SEC v. Kimmes*, 759 F. Supp. 430, 438 (N.D. Ill. 1991) (explaining that the defendant "has the right under Rule 43(b) to be present at any hearing relating to criminal contempt charges against him").

defendants violated in the 1996 suit. The defendants argue, therefore, that the sanction imposed was excessive and that the district court erred in considering their contumacious behavior in the postjudgment proceedings in the 1994 suit to enter the default judgment in this case. We disagree.

Under the plain language of Rule 37(b)(2), "[i]f a party . . . fails to obey an order to provide or permit discovery," the district court has authority to "strik[e] out pleadings . . . or render[] a judgment by default." FED. R. CIV. P. 37(b)(2)(C). We have explained that "dismissal is authorized only when the failure to comply with the court's order results from willfulness or bad faith . . . . [and] where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions." *Bluitt v. Arco Chem. Co.*, 777 F.2d 188, 190 (5th Cir. 1985). In making its "bad faith" determination, the district court was entitled to rely on its complete understanding of the parties' motivations. *See* FED. R. EVID. 404(b); *Batson*, 805 F.2d at 550-51; *Emerick v. Fenick Indus., Inc.*, 539 F.2d 1379, 1381 (5th Cir. 1976). Defendants present no authority for the proposition that the district court is prevented from considering a party's actions in a related case in making its bad faith determination under FED. R. CIV. P. 37. Moreover, the dilatory and obstructive conduct of the defendants has been well-documented and the extreme sanction of default judgment was warranted by their actions. *See Bonaventure*

-23-

*v. Butler*, 593 F.2d 625, 626 (5th Cir. 1979) ("Deliberate, repeated refusals to comply with discovery orders have been held to justify the use of this ultimate sanction."); *Emerick*, 539 F.2d at 1381 ("[W]hen a defendant demonstrates flagrant bad faith and callous disregard of its responsibilities, the district court's choice of the extreme sanction is not an abuse of discretion."). Accordingly, the district court did not abuse its discretion in entering a default judgment in the 1996 suit.

V

For the foregoing reasons, the judgment of the district court in appeal No. 97-50341 is hereby REVERSED and the cause is REMANDED to the district court for further proceedings, if necessary, consistent with this opinion. The judgment of the district court in appeal No. 97-50575 is hereby AFFIRMED.

DeMOSS, Circuit Judge, specially concurring:

I concur fully in the language and reasoning set forth in Part III of the foregoing opinion relating to appeal No. 97-50575. As to appeal No. 97-50341, I concur fully as to the language and

-24-

reasoning in Part II.B., but as to Part II.A. relating to appellate jurisdiction I concur only in the holding that this Court does have appellate jurisdiction to review the merits of the district court's order which was issued on March 31, 1996, and entered on April 1, 1996, and which held defendant Jean Smith in criminal contempt without any hearing or communication with any party.

This order was entered on the civil docket of the 1994 civil lawsuit and the conduct which the district court determined to be contumacious was Jean Smith's failure and refusal to comply with terms of certain orders of the district court. Those orders had been issued and entered on the docket of that same civil case. Jean Smith filed her notice of appeal as to the contempt order within thirty days after the entry of the contempt order, and that notice of appeal was entered on the same civil docket of the same civil case as the contempt order itself. As the majority opinion points out, there is not now and never has been a criminal case involving Jean Smith, and there never has been any criminal docket upon which the contempt order could have been entered. Consequently, it seems to me that the clear and plain language of FED. R. APP. P. 4(a) determines the timeliness of the notice of appeal filed in this case, and since that notice of appeal was timely filed under FED. R. APP. P. 4(a), we have appellate jurisdiction.

I do not join in the majority's analysis about the applicability of FED. R. APP. P. 4(b). I do not agree that a notice

-25-

of appeal filed in a civil case and entered on the civil docket of that case can constitute a notice of appeal as to an order which was never entered on a non-existent criminal docket. I think we are skating on terribly thin ice when we talk about "assuming *arguendo*" the applicability of either FED. R. APP. P. 4(a) or 4(b). Those two subparts of FED. R. APP. P. 4 are inherently and logically mutually exclusive. We just muddy the water for the trial bench and bar when we "assume *arguendo*" or otherwise speculate as to whether an order which is actually entered on a civil docket might be deemed for certain purposes to be entered on a hypothetical criminal docket and then assume that a notice of appeal which was actually filed in a civil docket can be assumed to be timely as to an order which has not yet been entered on a non-existent criminal docket.

I think we would do the bench and bar a better service by holding that when a district judge issues a summary contempt order as contemplated by FED. R. CRIM. P. 42(a), that order will be appealable under either FED. R. APP. P. 4(a) or 4(b), but not both, depending upon the docket on which the issuing judge directs that order to be entered of record. If the district judge does not designate the record on which the order is to be entered, the clerk of court should enter the summary contempt order on the docket of the case then pending before the court in which the contumacious conduct occurred and whether that pending case is civil or criminal

will determine which of FED. R. APP. P. 4(a) or FED. R. APP. P. 4(b) is applicable.