REVISED FEBRUARY 7, 2008
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 1, 2008

Charles R. Fulbruge III
Clerk

No. 07-50399

PLASTICSOURCE WORKERS COMMITTEE; IGNACIO PEREZ; BRENDA
ABURTO; BRENDA AGUILAR; MARY ALMONTE; et al.,

Plaintiffs-Appellees,

v.

DAVID G. COBURN, doing business as Plasticsource Inc.,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:05-cv-00434-DB

Before GARZA, STEWART, and OWEN, Circuit Judges.

PER CURIAM:[*]

Plaintiffs-Appellees, 64 former Plasticsource, Inc. ("Plasticsource")
employees, brought suit against David G. Coburn alleging that Coburn failed to
give employees any notice of the closure of the Plasticsource, Inc. factory and the
employees' impending termination, in violation of the Worker Adjustment and
Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101, et seq. Plaintiffs

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

sought to hold Coburn, Plasticsource, and International Manufacturing Solutions Corp. ("IMS") jointly and severally liable for statutory damages under the WARN Act. Coburn moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing that an individual may not be held liable for WARN Act violations. The district court denied his motion. Subsequently, after a dispute over Coburn's deposition, the district court struck Coburn's answer and granted Plaintiffs a default judgment against Coburn under Federal Rule of Civil Procedure 37. Coburn appeals the denial of his motion for judgment on the pleadings and the district court's striking of his answer and entry of a default judgment against him. We affirm.

I.

Plaintiffs are 64 individual factory workers who were employed by Plasticsource at its El Paso, Texas plant. The workers earned an average hourly wage of $8.97, manufacturing plastic parts for companies such as Eureka, Electrolux, and Toro. On January 26, 2005, Plasticsource's factory closed without warning, and workers were terminated. IMS, another company allegedly controlled by Coburn, attempted to remove Plasticsource's valuable plastic injection molding equipment, but this removal was stopped by an emergency injunction preventing removal of the equipment until the workers were paid their final paychecks.

On November 17, 2006, the Plasticsource Workers Committee, on behalf of the 64 individual employees, filed suit against Coburn in his individual capacity, Plasticsource, and IMS under the WARN Act.

Coburn is a Canadian citizen, who, at times, resides in Scottsdale, Arizona. From the record, the nature of Coburn's involvement in Plasticsource and IMS is not exactly clear. Apparently, in 2002, Plasticsource filed for Chapter 11 bankruptcy and a reorganization plan was developed. Thereafter, Coburn was hired by a creditors' committee to evaluate whether Plasticsource could be made

solvent and return to profitability. Coburn alleges that after determining that Plasticsource was viable, he became involved in the company, but only as an investor. He denies ever having been an officer, employee or shareholder of Plasticsource. Plaintiffs contest this assertion, and state that in 2003 Coburn held a 75% controlling interest in Plasticsource, that he transferred this interest to another one of his companies, and that Coburn served as Plasticsource's sole director from May 2003 through the January 2005 plant closing.

To clarify the extent of Coburn's relationship with Plasticsource and IMS, Plaintiffs sought discovery from Coburn. This discovery was especially relevant to Plaintiffs' claim that Coburn operated Plasticsource as his alter ego, and therefore should be liable for Plasticsource's WARN Act damages. However, it appears that Coburn resisted discovery throughout the litigation. Plaintiffs also sought documents and responses to interrogatories, but Coburn refused production. Plaintiffs moved to compel production, and on September 1, 2006, the district court filed an order compelling the document production and fining Coburn $1,600.00. Plaintiffs also sought to depose Coburn, but Coburn's attorneys refused, stating that: "Unfortunately, due to immigration laws, David Coburn cannot spend any more time in the USA this year. Please let me know what you would like to do about his deposition." Plaintiffs moved to compel Coburn's deposition, and on August 29, 2006, the district court granted this motion. The district court gave Coburn three options for the deposition: (1) appearing at the offices of Texas RioGrande Legal Aid in El Paso, Texas in September 2006; (2) if Coburn could not appear in El Paso, filing a deposition explaining why and then appearing at a deposition in Juarez, Mexico; or (3) if Coburn could not appear in Juarez, filing an affidavit explaining why, appearing at a deposition in Canada, and paying the travel expenses of Plaintiffs' counsel. This notice also states that:

> If Defendant Coburn fails to appear for his deposition under the terms of the preceding Part (A), Plaintiffs may move for an order imposing the sanctions stated by Rule 37 (A), (B), and (C). If the Court grants such a motion, it MAY RESULT IN A FINAL JUDGMENT AGAINST DAVID Coburn, RENDERING HIM PERSONALLY LIABLE FOR ALL OF PLAINTIFFS' CLAIMS IN THE ABOVE MATTER, CLAIMS WHICH AMOUNT TO ROUGHLY $500,000.

Plaintiffs then attempted to schedule Coburn's deposition, but Coburn refused to appear on any date in September 2006. On September 29, 2006 Coburn filed an affidavit indicating that because of his immigration status, he would not be permitted to enter the United States until 2007,[1] and that he could be deposed in either Juarez, Mexico or Canada in December 2006. Coburn also indicated that his brother was terminally ill, and that he would prefer the deposition be held off for a few months. On October 19, 2006, Plaintiffs sought to amend the September 1, 2006 discovery order to permit the taking of Coburn's deposition in Juarez on December 4 and 5, 2006. In that request, Plaintiffs indicated that they would "seek[] the sanctions already described to him by the Court if he fails to comply." On October 26, 2006, the district court issued an amended scheduling order, which ordered Coburn "to appear for his deposition to be taken in Juarez, Mexico during the month of December, 2006." The order further stated that "[i]f Mr. Coburn fails to obey this second order directing his deposition, sanctions permitted by Rule 37(b)(2)(A) will be imposed."

Plaintiffs noticed Mr. Coburn that his deposition would take place in Juarez, Mexico on December 4 and 5, 2006, beginning at 9:30 a.m. each day. On December 1, 2006, the Friday prior to the scheduled deposition, Coburn's attorney notified Plaintiffs that delays prevented Coburn from attending the

---

[1] Coburn asserted that because he is Canadian citizen who is not a "permanent resident" of the United States, he is only allowed to spend 180 days in the United States. He claimed that for 2006, he had already exhausted these 180 days.

deposition until 1:00 p.m. on December 4. Coburn appeared for the deposition on December 4. During the deposition, Coburn indicated that he had spent the previous night at his home in Scottsdale, Arizona, in apparent contravention of his earlier statements to the Court that was not permitted in the United States. After about two hours of questioning, and against the advice of his counsel, Coburn decided to leave the deposition. On the record, Coburn's counsel stated that Plaintiffs had told Coburn during the break that they would continue the deposition on December 5th only if it was taken in El Paso, rather than Juarez, and that Coburn was unwilling to do this. Plaintiffs indicated to Coburn that they would seek a default judgment against him, but Coburn responded that he did not care. Coburn then left the deposition, and notified Plaintiffs that he would not appear on December 5th in El Paso to continue the deposition.

Subsequently, Plaintiffs moved for a default judgement, under Rule 37, against Coburn on the basis that his noncompliance with the discovery order compelling his deposition was "deliberate" and "willful." On February 8, 2007, the district court granted this motion, striking Coburn's answer and accepting all Plaintiffs' allegations as true against him. The Court imposed $196,708.60 in total WARN Act damages, as well as costs and attorney's fees. Coburn appealed.

II.

Coburn first argues that the district court abused its discretion in striking his answer and entering a default judgment against him. We review the imposition of Rule 37 sanctions for abuse of discretion. Smith v. Smith, 145 F.3d 335, 344 (5th Cir. 1998). Generally, in the context of Rule 37 sanctions, a district court abuses its discretion when it makes a mistake of fact or law. Tollett v. City of Kemah, 285 F.3d 357 (5th Cir. 2002)

Rule 37(b)(2) authorizes the district court to strike pleadings or render a default judgment against a party as a sanction for failure to comply with a

discovery order.[2] FED. R. CIV. P. 37(b)(2)(iii), (vi). When a district court awards default judgment as a discovery sanction, two criteria must be met. Smith, 145 F. 3d at 344. First, the penalized party's discovery violation must be willful. Id. Second, the drastic measure is only to be employed where a lesser sanction would not substantially achieve the desired deterrent effect. Id. The reviewing court may also consider whether the discovery violation prejudiced the opposing party's preparation for trial, and whether the client was blameless in the violation. Batson v. Neal Spelce Assocs., 765 F.2d 511, 514 (5th Cir. 2002).

Coburn does not argue that a lesser sanction would have sufficed, rather he argues that his failure to continue to attend the deposition was not willful or in bad faith. First, he argues that he did attend the deposition in Juarez, Mexico and gave over 64 pages of deposition testimony. Second, Coburn contends that based on Plaintiffs' questions during the deposition related to his presence in the United States, as well as Plaintiffs' insistence that the deposition continue in the United States, he reasonably believed Plaintiffs might attempt to report his immigration violations to the authorities and that his attendance at the deposition in El Paso, Texas would result in criminal prosecution because of his

---

[2] In relevant part, Rule 37 provides:
    (b) Failure to Comply with a Court Order.
    . . .
      (2) Sanctions in the District Where the Action Is Pending.
     (A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
      (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
    . . .
      (iii) striking pleadings in whole or in part;
    . . .
      (vi) rendering a default judgment against the disobedient party.

immigration status. Therefore, he says that he was unable to comply with the district court's order regarding the deposition. In reply, Plaintiffs argue that it is not only Coburn's failure to show up in El Paso on December 5, 2006 that is it at issue, it is also his refusal to complete the first day of depositions in Juarez, Mexico. In addition, Plaintiffs argue that if Coburn really had any fear of arrest, he could have remained in Mexico to complete the deposition on December 4, 2006. Plaintiffs deny threatening to report Coburn to the immigration authorities, and reject his fear of arrest as illusory, pointing to Coburn's return to the United States the evening of December 4, 2006.

The record contradicts Coburn's claims and indicates that Coburn willfully violated the district court's order by leaving the deposition in Juarez on December 4 after only two hours of questioning in a deposition that was scheduled to last 12 hours. The district court's order required Coburn to "appear for his deposition" and indicated that the deposition would "continue on these dates until completed for twelve hours total." Coburn's refusal to continue the deposition after two hours was violative of this order, especially given that Plaintiffs' counsel clearly indicated their intention to continue the deposition "right here, right now." This is true regardless of whether Coburn's fears of prosecution justified his non-attendance on December 5. Further, Coburn's non-compliance was willful and knowing. Coburn had fair warning that his non-compliance with the deposition would result in sanctions. The district court had stated as much in its orders, and Plaintiffs' counsel indicated its intention to seek Rule 37 sanctions if Coburn left the deposition. Indeed, Coburn's decision to leave the deposition was even made against the advice of counsel. "In making its 'bad faith' determination, the district court was entitled to rely on its complete understanding of the parties' motivations." Smith, 145 F.3d at 344. In this case, Coburn had previously refused to comply with both written discovery demands and the district court's orders regarding his deposition.

7

Coburn's prior dilatory and obstructive conduct was well-documented and the extreme sanction of default judgment was warranted by his actions. The district court did not abuse its discretion by striking his answer and entering a default judgment against him. See id. (parties' repeated refusal to appear for depositions and comply with discovery justified dismissal); Bonaventure v. Butler, 593 F.2d 625, 626 (5th Cir. 1979) ("Deliberate, repeated refusals to comply with discovery orders have been held to justify the use of this ultimate sanction.").

## III.

Second, Coburn argues that, as a matter of law, he cannot be held liable for WARN Act violations because the WARN Act is applicable only to corporate entities, not individuals. Therefore, he contends, this Court should reverse the default judgment entered against him. Whether a natural person may be liable for statutory damages under the WARN Act is a question of statutory interpretation that we review de novo. See Dial One of the Mid-South, Inc. v. BellSouth Telecomms., Inc., 269 F.3d 523, 525 (5th Cir. 2001).

The WARN Act prohibits employers from ordering a "plant closing or mass layoff until the end of a 60-day period after the employer serves written notice" of the closing or layoff to its employees. 29 U.S.C. § 2102(a). An employer who violates this notice provision is required to provide "back pay for each day of violation." 29 U.S.C. § 2104(a)(1). "In short, WARN imposes a statutory duty on businesses to notify workers of impending large-scale job losses and allows for limited damages 'designed to penalize the wrongdoing employer, deter future violations, and facilitate simplified damages proceedings.'" Staudt v. Glastron, Inc., 92 F.3d 312, 314 (5th Cir. 1996).

The WARN Act and Department of Labor regulations define an employer as any business enterprise that employs 100 or more employees. 29 U.S.C. § 2101(a)(1); 20 C.F.R. § 639.3(a)(1). Coburn argues that the use of the term

"business enterprise" indicates that the WARN Act is only applicable to corporate entities, not individuals. However, this Court has previously found that natural persons may be held indirectly liable for statutory WARN Act damages under an alter-ego theory. See Hollowell v. Orleans Reg'l Hosp., 271 F.3d 379, 385 (affirming judgment imposing liability for WARN Act damages on three natural persons because jury found that the individuals were the alter egos of the employer under Louisiana law). Under certain circumstances, Texas recognizes the theory of alter ego liability, permitting a court to hold an individual liable for corporate obligations. See Castleberry v. Branscum, 721 S.W. 2d 270, 271 (Tex. 1986) (holding that although incorporation normally protects shareholders, officers, and directors from liability for corporate obligations, "when these individuals abuse the corporate privilege, courts will disregard the corporate fiction and hold them individually liable."). Therefore, we must reject Coburn's contention that, as a matter of law, an individual can never be held liable for WARN Act violations.

Under the district court's order, all claims against Coburn were accepted as true, including the claim that he is personally liable for the WARN Act violations because "he operated Plasticsource as his alter-ego, and Plasticsource's corporate veil should be pierced as to Defendant Coburn."[3] Because this Court permits individuals to be held liable for WARN Act violations

---

[3] Coburn also alleges that he cannot be held liable for the WARN Act violations because Plasticsource's shut down was an unforeseen business circumstance. See 29 U.S.C. § 2102 (B)(2)(A) ("An employer may order a plant closing or mass layoff before the conclusion of the 60-day period if the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required."); Halkias v. Gen'l Dynamics Corp., 137 F.3d 333, 335 (5th Cir. 1998) (affirming summary judgment to defendant corporation because plant's closure was not reasonably foreseeable). However, under the district court's order, Coburn's answer, including his affirmative defenses, was stricken, and all allegations in Plaintiffs' complaint were to be accepted as true against him. Therefore, we cannot consider Coburn's fact-based argument that Plasticsource's shut down was an unforeseen business circumstance.

under an alter-ego theory of liability, the district court did not err in holding Coburn personally liable for the WARN Act violations at issue in this case.

IV.

For the foregoing reasons, we affirm the district court's entry of default judgment against Coburn.