United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 5, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 02-40263

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

$49,000 CURRENCY, Etc.,

Defendant,

DANA W. WHITE; MICHAEL JACKSON,

Claimants - Appellants.

_____

Appeal from the United States District Court
for the Eastern District of Texas

_____

Before BENAVIDES, STEWART, and CLEMENT, Circuit Judges.

BENAVIDES, Circuit Judge:

This is an appeal from a default judgment. In the course of a traffic stop the Government seized $49,000 in currency and filed a complaint against it for forfeiture pursuant to 21 U.S.C. §881(a)(6). Claimants-Appellants White and Jackson filed a 12(b)(6) motion to dismiss based on the theory that the Government failed to plead facts establishing probable cause with sufficient particularity so as to satisfy Rule E(2)(a)of the Supplemental Rules for Admiralty and Maritime Claims (hereinafter, Rule

1

E(2)(a)).[1] The district court denied the motion to dismiss, finding that the Government need not establish probable cause for the seizure at the pleading stage of litigation, and in the same order, granted the Government's motion for Rule 37 sanctions in the form of the entry of default judgment in the Government's favor, thereby terminating White's and Jackson's claims. Claimants-Appellants appeal both rulings.

I.

*A. The Stop and Seizure*

At 2:46 a.m. on the morning of March 1, 2000, Dequilla White was the subject of a traffic stop on I-10. The stop was executed by Sergeant Fountain of the Jefferson County Sheriff's Department who averred that he initially stopped White because White crossed onto the shoulder while driving. Upon approaching White's vehicle, Fountain observed that White's passenger, Melvin Morris, was not wearing a seatbelt, as is mandated by Texas law.

The officers obtained consent to search the vehicle and found a pistol, a garment bag, and no other luggage. Inside the garment bag was $49,000.00 in cash, divided into seven bundles each bearing a small piece of paper denoting the amount. The Government asserts that this is a common method of carrying currency in drug-related transactions.

---

[1] In their motion to dismiss, Claimants also charged that the police lacked probable cause for the underlying traffic stop, but that question is not before us.

When asked to explain the presence of the money, initially White allegedly reported that it belonged to three different people who had entrusted it to White so that he could purchase property on their behalf in Leesville. After a narcotics dog alerted to the presence of narcotics on the currency, White allegedly told the officers that he had actually received the money from one individual, Michael Jackson, in order to purchase three pieces of real property in Leesville on Jackson's behalf. White asserted that he was to purchase the property at an auction, but that the location of the auction was, at that time, unknown to him.

Morris was questioned separately during the stop. The officers noted discrepancies between White and Morris's explanation of their activities and plans. A search of Morris turned up a slip of paper in Morris's shoe which appeared to the officers to be a receipt, and which contained what officers believed to resemble calculations made based on the price of a kilogram of cocaine.

White and Morris were read their Miranda rights and released from the scene. The currency was seized for forfeiture proceedings.

B. *Forfeiture Action*

On August 18, 2000, the government filed a complaint for

forfeiture against $49,000 Currency under 21 U.S.C. §881(a)(6).[2] The affidavit of Officer Permenter was attached, which the district court found contained details of the stop and seizure, "tending to show probable cause for the Complaint." On September 28, 2000, Dana White filed a Claim and Answer. Michael Jackson filed his Claim and Answer on October 13, 2000.[3] The Government served a formal disclosure on Claimants on October 26, 2000, and served a request for discovery and interrogatories on December 12, 2000.

Then began what the Government contends, and what the record reflects, was a protracted campaign to extract discovery from Claimants. First, after what the Government alleges were multiple promises from Claimants' counsel that formal disclosures, answers to interrogatories, and requested documents were "on the way", the Government's counsel agreed to travel to Baton Rouge on February 17, 2001 to personally retrieve the

---

[2] That section provides in pertinent part:
        (a) Subject property:
                The following shall be subject to forfeiture to the United States and no property right shall exist in them:
                ...
                (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

[3] The Claimants-Appellants assert that $9,000 of the seized money belongs to Dana White, and the remaining $40,000 belongs to Michael Jackson.

discovery.  However, upon review of the documents which Claimants rendered, the Government  notified Claimants that the discovery was inadequate, that in particular there were no disclosures, and that the answers to interrogatories and production requests were incomplete.[4]  On April 13, 2001, having received no response, the Government filed a motion to compel, which the Court granted May 24, 2001.  Claimants were ordered to produce outstanding discovery by June 4, 2001.  On June 20, 2001, having still received nothing further from Claimants, the Government notified Claimants' counsel that the Government planned to file a motion to strike Claimants' pleadings and enter judgment for the Government, if Claimants failed to comply with the court's order to compel by June 29, 2001.

On July 2, 2001, Claimants filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Simultaneously, Claimants supplied the Government with additional discovery documents which the Government deemed incomplete and insufficient to comply with the district court's order of May 24, 2001.  The next day the Government moved for sanctions against Claimants for failure to comply with the order

---

[4]It should be noted here that both White and Jackson did provide some discovery to the Government in their original answers and prior to the motion to compel, including answers to interrogatories as well as some requested documents. However, the Government articulated specific omissions and deficiencies with respect to the original answers, and, having no success in eliciting a response from Claimants' counsel, filed a motion to compel more detailed complement of answers and documents.

to compel discovery.  Specifically, the Government's motion requested the Claimants' pleading be struck and default judgment entered in favor of the Government.

The district court conducted a combined motion hearing to consider both Claimants' motion to dismiss and the Government's motion for sanctions.  On November 28, 2001, the district court denied the motion to dismiss, granted the Governments' motion for sanctions, and entered a default judgment against the currency in favor of the Government. Claimants-Appellants now appeal the district court's rulings.

## II.

### A.    Points of Appeal

Claimants-Appellants present two issues for appeal. First they protest the denial of their motion to dismiss, in which they argued that the Government's complaint was not pled with sufficient particularity under Rule E(2)(a). In support of this point, Claimants-Appellants charge that the district court applied the wrong standard in evaluating their motion to dismiss the complaint, and that, as a result, the district court erred in failing to dismiss the complaint.[5]

Claimants-Appellants' second point of appeal challenges the district court's decision to grant the Government's motion for

---

[5]Where predicated on questions of law, this Court reviews the denial of a motion to dismiss *de novo*. *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).

Rule 37 sanctions, a decision which resulted in the termination

of their claims.[6]

Moreover, Claimants-Appellants synthesize and construct an

interesting interdependency between their two points of appeal,

contending that if this Court finds in their favor regarding the

motion to dismiss, the question of sanctions becomes moot. In

this, however, Claimants-Appellants are mistaken.[7] We find that

the two motions were not interdependent, but instead that the

district court sanctioned Claimants-Appellants for behavior

unrelated to the sufficiency of the complaint.[8] The district

---

[6]This Court reviews the imposition of Rule 37 sanctions for abuse of discretion. *Smith v. Smith*, 145 F.3d 335 (5th Cir. 1998).

[7] We note that all of the violations which serve as the basis for the district court's sanction ruling were committed prior to the time that the district court evaluated and ruled upon the motion to dismiss.

[8] We observe incidentally that Claimants-Appellants are correct in their contention that the district court used the wrong standard in evaluating the sufficiency of the Government's complaint. In denying Claimants-Appellants' motion to dismiss, the district court found that, "[t]he heightened pleading requirements in a Section 881 forfeiture case necessitate the plaintiff adding more detail to its complaint than would ordinarily be required under the federal rules, not that the plaintiff must actually prove the existence of a particular element." *U.S. v. $49,000.00 in U.S. Currency*, 194 F.Supp.2d 576, 578 (E.D.Tex. 2001). The district court further observed that:

> [t]he present case is only at the pleading stage, and therefore the Government is not yet required to prove that probable cause exists...this is not to say that probable cause is unimportant in a forfeiture action,

> but only that "[i]t is in the context of a
> trial or summary judgment motions that the
> government must make this showing of probable
> cause."

*$49,000.00 in U.S. Currency*, 194 F.Supp.2d at 578 (quoting, *United States v. $19,120 in United States Currency*, 700 F.Supp. 33, 34–35 (N.D.Ga.1987)).

These statements, however, do not constitute an accurate articulation of the pleading standard imposed by Rule E(2)(a). Rule E(2)(a) requires that the complaint:

> state the circumstances from which the claim
> arises with such particularity that the
> defendant or claimant will be able, without
> moving for a more definite statement, to
> commence an investigation of the facts and to
> frame a responsive pleading.

Thus, Rule E(2)(a) imposes a substantive pleading requirement, and certainly, under Rule E(2)(a)within the context of civil forfeiture, the Government must do more than simply provide greater detail than it otherwise would be required to do under Rule 8 of the Federal Rules of Civil Procedure. While the district court concluded correctly that the Government need not *prove* elements of its case at the pleading stage, the Government is compelled by the specificity requirement of Rule E (2)(a) to allege facts which are sufficient to support a reasonable belief that those elements are met. *See United States v. Mondragon*, 313 F.3d 862,865 (4th Cir. 2002)(finding that Rule E (2)(a) requires the Government to "allege sufficient facts to support a reasonable belief that the property is subject to forfeiture."). Thus, under Rule E (2)(a), the Government must allege facts supporting a reasonable belief that it will be able to bear its burden at trial. *See id* at 865.

Nonetheless, it appears that even under the proper Rule E (2)(a) standard, in the instant case the Government's complaint was plead with sufficient particularity so as to support a reasonable belief that the government would have been able to bear its burden at trial.

Moreover, we further note here that although the Government's burden at trial in civil forfeiture cases was changed from a showing of probable cause to proof by a preponderance of the evidence by the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), 18 U.S.C. § 983 (c), we need not consider here whether CAFRA applies retroactively to the proceeding at bar, as it appears that under the application of

court sanctioned Claimants-Appellants for failure to comply with a court order, and Claimants-Appellants' misconduct in failing to comply with the court's order was in no way related to the sufficiency of the Government's pleading. Therefore, regardless of whether the complaint was sufficiently pled, Claimants-Appellants' noncompliance with the order remained subject to sanction. Thus, assuming the district court did not abuse its discretion in entering default judgment in the Government's favor - as we find herein that it did not - we need not reach the question of whether the Government's complaint was indeed sufficient under the standard set forth by Rule E (2)(a). Consequently, because the district court acted appropriately in entering default judgment in the Government's favor, we can afford Claimants-Appellants no relief herein.

### B.    Rule 37 Sanction

Because we find the issue dispositive as to the appeal at bar, we turn first to consider Claimants-Appellants' challenge to the district court's sanction ruling. Claimants-Appellants contest the district court's decision to  grant the Government's

---

either trial burden, the Government's pleading supports a reasonable belief that the Government would be able to meet its burden at trial. *Compare*, *United States v. Santiago*, 227 F.3d 902, 909 n.3 (7th Cir. 2000)(finding that CAFRA should not be applied retroactively to proceedings instigated prior to August 23, 2000); *United States v. Real Property in Section 9*, 241 F.3d 796, 797 (6th Cir. 2001)(finding retroactive application of CAFRA to be appropriate).

9

motion for sanctions pursuant to Rule 37(b)(2)(C).  Rule 37
(b)(2)(c)  authorizes the district court to strike pleadings or
render a default judgment against a party as a sanction for
failure to comply with a discovery order.[9] Fed. R. Civ. P.
37(b)(2).

This Court reviews the granting of sanctions for abuse of
discretion, including those sanction rulings which result in the
entry of default judgment.  *Smith v. Smith*, 145 F.3d 335 (5th
Cir. 1998).  Generally, in the context of Rule 37 sanctions, a

---

[9] Rule 37 (b)(2) states in pertinent part:
> If a party ...fails to obey an
> order to provide or permit discovery... the
> court in which the action is pending may make
> such orders in regard to the failure as are
> just, *and among others* the following:
>
> (A)  An order that the matters
> regarding which the order was made or any
> other designated facts shall be taken to be
> established for the purposes of the action in
> accordance with the claim of the party
> obtaining the order;
>
> (B)  An order refusing to allow the
> disobedient party to support or oppose
> designated claims or defenses, or prohibiting
> that party from introducing designated
> matters in evidence;
>
> (C)  An order striking out
> pleadings or parts thereof, or staying
> further proceedings until the order is
> obeyed, or dismissing the action or
> proceeding or any part thereof, or rendering
> a    judgment by default against the
> disobedient party....

Fed. R. Civ. P. 37(b)(2)  (emphasis added).

district court abuses its discretion when it makes a mistake of fact or law. *Tollett v. City of Kemah*, 285 F.3d 357 (5th Cir. 2002). However, where a district court awards default judgment as a discovery sanction, two criteria must be met. *Smith*, 145 F.3d at 344; *Batson v. Neal Spelce Associates, Inc.*, 765 F.2d 511, 514 (5th Cir. 1985) (discussing the criteria to be used when reviewing a district court's dismissal of a claim as a Rule 37 sanction). First, the penalized party's discovery violation must be willful. *Smith*, 145 F.3d at 344; *Batson*, 765 F.2d at 514 (*citing National Hockey League v. Metro Hockey Club, Inc.,* 427 U.S. 639, 640(1976)); *Jones v. Louisiana State Bar Association,* 602 F.2d 94, 96 (5th Cir.1979) (per curiam). Also, the drastic measure is only to be employed where a lesser sanction would not substantially achieve the desired deterrent effect. *Smith*, 145 F.3d at 344; *Batson*, 765 F.2d at 514 (*citing Marshall v. Segona,* 621 F.2d 763, 768 (5th Cir.1980)). The reviewing court may also consider whether the discovery violation prejudiced the opposing party's preparation for trial, and whether the client was blameless in the violation. *Batson*, 765 F.2d at 514.

Here, Claimants-Appellants do not dispute the willfulness of their violation of the court's order, nor do they explicitly argue that a lesser sanction could have manufactured the appropriate level of deterrence. Claimants-Appellants instead confine their challenge to this ruling to the contention that the

11

district court imposed too harsh a penalty given that Claimants-Appellants had partially complied with previous discovery requests, and were only a "little tardy" with their final discovery disclosures. The record, however, contradicts this claim, and instead indicates that rather than being merely a little tardy, Claimants-Appellants failed in several - if not all - material respects to comply with the court's order.

Moreover, Claimants-Appellants' argument is predicated on the understanding that their level of cooperation with the Government is the central concern here, and that focus is misplaced.[10]  The district court imposed sanctions for failure to comply with a court *order*. In the opinion granting the motion for sanctions, the court noted, "neither individual provided any answer or acknowledgment of the Order until approximately thirty

---

[10] Claimants-Appellants assert, for example, that:

> [the Government] request[ed] minute details that average people do not continually maintain records on...[these demands exceeded] the scop[e] of the record keeping of the claimants....Knowing that the discovery requests [were] responded to a day after the agreed upon deadline between the parties, the court reacted and responded as though there was an abject effort not to comply with discovery altogether.

However, the "deadline between the parties"  - which, incidentally, the record reflects was not so much an agreement as a deadline unilaterally set by the Government as the timetable after which the Government would seek sanctions - is not at issue here. It is the utter failure by Claimants-Appellants to meet the deadline set by the *court* which rendered Claimants-Appellants subject to sanction.

days after the deadline directed by the court...they did not communicate any problem they had encountered to the court nor request an extension of time." The court further stated that "line items of discovery requests which were directed to be answered in the court's Order were answered to the effect that 'the original answer was sufficient to satisfy discovery'."

And indeed the record so reflects. In the Discovery Order, the district court directed both Claimants-Appellants White and Jackson to file, by June 4, complete and full disclosure as is required by Rule 26 of the Federal Rules of Civil Procedure. *See*, Fed. R. Civ. P. 26. Neither Claimant filed a Rule 26 disclosure by June 4, or at any time subsequent to that date.

Additionally, the district court's order directed Claimants-Appellants to answer specific numbered interrogatories and to comply with specific numbered document requests, as outlined in the Government's motion to compel.[11] These specific discovery productions, as well as all other outstanding discovery, were to be delivered to the Government not later than June 4, 2001.

However, neither Claimant responded to the order by June 4, nor did Claimants-Appellants petition the court for more time in which to respond. Neither the Government nor the court received a response from Claimants-Appellants until July 2, 2001, at which point Claimants-Appellants' counsel, Mr. Jack Leary, served and

_____

[11] In particular, White was directed to answer interrogatory numbers 6, 12, 13, 14, and 16 and to produce documents in compliance with the Government's request numbers 2, 3, 9, 13, and 14. Jackson was directed to answer interrogatory numbers 3, 6, 15, 16, and 17 and produce documents as requested by Government request numbers 2, 3, 10, 13, 14, 15, 16, 17, and 18.

filed on White's behalf a document captioned "Supplemental Answers to Interrogatories," the entire content of which consisted of the following:

> Interrogatories Nos. 6, 12, 13, 14, and 16 :
> After numerous requests by counsel, Mr. Dana White has not provided counsel with any additional answers or documentation.[12]

Thus, in response to the district court's order, White provided no Rule 26 disclosure, no further discovery, and no explanation for the deficiency.

Claimant Jackson, on the other hand, was more responsive to the Discovery Order than was White. Nonetheless Jackson, too, failed to meet several material requirements of the Order. On July 2, Leary filed on Jackson's behalf a "Supplemental Answer to Interrogatories" which provided no new interrogatory answers, but instead answered two of the five specific interrogatory requests with the conclusory insistence that the original answers were sufficient.[13]

Obviously, in directing Claimant Jackson to answer specific interrogatories, the district court was not soliciting Jackson's opinion as to whether the original answers were sufficient. The Government deemed the original answers insufficient, and

---

[12] Similarly, in answer to the district court's order directing Claimant White to produce documents in accordance with Government request numbers 2, 3, 9, 13 and 14, Claimants-Appellants' counsel responded that, "[a]fter numerous requests by counsel, Mr. Dana W. White has not provided counsel with any additional answers or documentation."

[13] Jackson responded to the remaining three interrogatories with references to attached documents.

14

consequently filed a motion to compel. Jackson was afforded an opportunity to brief a response to the Government's allegations of insufficiency, but Jackson declined to do so. Instead, Jackson waited until nearly a month had passed from the district court's mandatory deadline and then, without analysis, informed the court that no further information was required.[14]

Nevertheless, Claimants-Appellants urge this Court to find that the district court abused its discretion in imposing the sanction of default judgment. In mounting this argument, however, Claimants-Appellants do not argue that the district court made a mistake of fact in finding that Claimants-Appellants had failed to comply with its May 24, 2001 order, nor do they contend that unbeknownst to the district court, extenuating circumstances were at play in connection to their discovery violations.

Instead, Claimants-Appellants note that other options were available to the district court to "coerce" them into compliance. To some extent they could be said to be raising the claim that the district court failed to use a less drastic sanction where the same deterrent effect could be achieved, and if Claimants-Appellants were correct on this point, then the imposition of default judgment would have been inappropriate here. *Smith*, 145 F.3d at 344; *Batson*, 765 F.2d at 514.

---

[14] In an addendum to Jackson's July 2 "Supplemental Answers", Jackson did produce several of the documents requested by the Government. However, these productions were also incomplete.

15

However, Claimants-Appellants are not correct on this point. In the case at bar, the district court entertained a motion to compel brought by the Government, and Claimants-Appellants were invited to respond to that motion. Claimants-Appellants did not respond, and the motion was granted. Next, an amply clear order issued from the court which directed Claimants-Appellants to provide discovery disclosures, interrogatory answers and outstanding document productions by June 4. Still, Claimants-Appellants persisted in their disinclination to respond. Thus, were we now to adopt Claimants-Appellants' view, we would have to surmise that at this point in the discovery fiasco, the district court was yet required to attempt to coax Claimants-Appellants into compliance with its order by imposing incrementally increasing sanctions. We do not adopt such a view.

Instead, we conclude that, presumably, the order itself was the method by which the district court chose to compel discovery compliance. In failing to comply with the district court's order, Claimants-Appellants rendered themselves vulnerable to sanctions to be administered in the district court's discretion. Therefore, here, in light of the record as a whole, we find that the district court was reasonable in concluding that, "[t]he Claimants' dilatory actions demonstrated by their lengthy delays and their obstructive behavior as exemplified by their evasive and incomplete responses constituted bad faith." Consequently,

16

the district court was well within its discretion in awarding default judgment as a sanction, and we will not disturb that determination.

## III.

For the foregoing reasons we AFFIRM the judgment of district court.