# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 2, 2020

Lyle W. Cayce
Clerk

No. 19-30791

In the Matter of: Christopher Martin Ridgeway,

*Debtor*,

Christopher Martin Ridgeway,

*Appellant*,

*versus*

Stryker Corporation; Howmedica Osteonics
Corporation,

*Appellees*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:18-CV-7651

Before Smith, Ho, and Oldham, *Circuit Judges*.

Andrew S. Oldham, *Circuit Judge*:

For the last seven years, Christopher Martin Ridgeway and his former employer have waged scorched-earth lawfare against one another. Ridgeway has lost every battle and incurred millions of dollars in damages, sanctions, and attorney's fees along the way. In this appeal, Ridgeway asks us to void

No. 19-30791

one part of his litigation liabilities—namely, a $2 million fee award. We refuse his request and affirm.

I.

Between October 2001 and September 2013, Ridgeway worked for Howmedica Osteonics Corporation, a subsidiary of Stryker Corporation (collectively, "Stryker"). Stryker believed that Ridgeway intended to use its confidential business information at his next job. So Stryker sued Ridgeway in the United States District Court for the Western District of Michigan for breach of contract, breach of fiduciary duty, and misappropriation of trade secrets in violation of Michigan's Uniform Trade Secrets Act, MICH. COMP. LAWS §§ 445.1901 *et seq.* ("MUTSA").

A jury found that Ridgeway had breached his contractual obligations, breached his fiduciary duty, and violated MUTSA. What's more, the jury found the MUTSA violation was willful and malicious. That's important because MUTSA permits a "court [to] award reasonable attorney's fees to the prevailing party" if "willful and malicious misappropriation [of trade secrets] exists." MICH. COMP. LAWS § 445.1905.

The Michigan district court entered judgment in Stryker's favor on March 9, 2016. That gave Stryker 14 days—until the end of March 23—to request attorney's fees. *See* FED. R. CIV. P. 54(d)(2)(B)(i). Come March 23, Ridgeway filed a Chapter 11 bankruptcy petition in the Eastern District of Louisiana. The automatic stay caused by the filing of the petition, *see* 11 U.S.C. § 362(a), prevented Stryker from making an attorney's fee request in the Michigan proceedings.

Instead, Stryker filed a proof of claim for those unliquidated attorney's fees, totaling $2,272,369.54, and supported by hundreds of pages of time entries billed by Stryker's lawyers. But the amount claimed—and the corresponding time entries—do not just relate to the lawyers' work on the

MUTSA claim. Stryker says that, by virtue of the "Common Core" doctrine, its win on the MUTSA claim entitles it to attorney's fees related to *all* of its claims against Ridgeway. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (holding a civil-rights plaintiff can recover attorney's fees for claims that "involve a common core of facts or will be based on related legal theories," even if only one of those claims arises under a fee-shifting statute).

Ridgeway filed his initial objection to Stryker's proof of claim in December 2016. In that objection, Ridgeway argued that Stryker was entitled to nothing—not MUTSA-related attorney's fees, and certainly not fees for the other claims. Ridgeway's view is that fee recovery under the Common Core doctrine "is reserved for fee awards in civil rights cases." Also in the December 2016 objection, Ridgeway faulted Stryker's attorneys for writing billing entries that did not sufficiently separate MUTSA work from work on other claims. He also cited 27 time entries that *did* clearly refer to MUTSA.

Fast forward to April 2017. On April 3, the bankruptcy court confirmed a plan of reorganization, effective April 13. The plan gave Ridgeway an additional 30 days from the effective date to levy additional challenges to creditors' claims. On April 6, the court held a scheduling conference with the intent to narrow the issues in dispute. In line with that aim, the court issued an order the following day attempting to focus the dispute over time entries:

> Not later than May 15, 2017, debtor shall file and serve on Stryker and Howmedica's counsel a list of time entries in Stryker and Howmedica's counsel's billing statements that it contends are objectionable, specifying for each entry the debtor's basis for claiming that the debtor should not be liable for the charges relating to the time entry, with a concluding summary of the total amounts for each objection category.

No. 19-30791

Purportedly in response to this April 7 order, Ridgeway filed on May 15 a document styled as a "Supplemental Objection" to Stryker's proof of claim. The Supplemental Objection included grounds not raised in the December 2016 objection. But the Supplemental Objection did not include any argument about the Common Core doctrine or a list of time entries.

Seizing on this omission, Stryker argued that Ridgeway had violated the April 7 order. And it moved to strike the portions of Ridgeway's December 2016 objections that related to the Common Core doctrine. Ridgeway's retort was two-pronged: First, he asserted that "[n]owhere in [the April 7] order does the Court command the Debtor to prepare any lists related to its objections concerning the 'common core' doctrine." Second, he argued that it was *Stryker's* job to identify the MUTSA entries.

The bankruptcy court explained at a hearing in July 2017 that it had in fact expected to receive a list of time entries with objections—including Common Core objections—from Ridgeway by the May 15 deadline. Without that list, the judge was "sitting [t]here three months almost to the day after [the April] status conference with the ball having not moved down the field, perceptibly." Because Ridgeway did not identify specific time entries to which his Common Core objections applied, the court struck those objections.

Ridgeway moved for reconsideration, again arguing that he'd complied with the April 7 order. Because the bankruptcy court had already rejected that exact argument, it denied the motion.

In July 2018, after a lengthy evidentiary hearing, the bankruptcy court allowed Stryker's proof of claim, including fees claimed under the Common Core doctrine. The district court affirmed. Ridgeway timely appealed.

4

No. 19-30791

## II.

Ridgeway says that only a jury can award MUTSA attorney's fees. He also claims that the courts below erred in striking his Common Core objections. Reviewing the bankruptcy court's findings of fact for clear error, its conclusions of law *de novo*, and the striking order for abuse of discretion (because it's a sanction), we reject each of Ridgeway's arguments in turn. *See First Nat'l Bank v. Crescent Elec. Supply Co. (In re Renaissance Hosp. Grand Prairie Inc.)*, 713 F.3d 285, 294 (5th Cir. 2013); *Perkins Coie v. Sadkin (In re Sadkin)*, 36 F.3d 473, 475 (5th Cir. 1994) (per curiam).

## A.

First, Ridgeway insists that the Michigan jury—not the Louisiana bankruptcy judge—needed to decide whether to award Stryker attorney's fees for its MUTSA win. The argument borders on frivolous.

### 1.

Ridgeway focuses his argument on what Michigan law has to say about jury involvement in attorney's fees awards. But he spends no time explaining why that matters in federal court. Whether "a state practice that relates to the division of duties between state judges and juries must be followed by federal courts in diversity cases" is a messy topic, implicating the *Erie* doctrine as well as the Seventh Amendment. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 449 (1996) (Scalia, J., dissenting). But as luck would have it, there is an on-point federal rule, Federal Rule of Civil Procedure 54(d). And a court need "not wade into *Erie*'s murky water unless the federal rule is inapplicable or invalid." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). Both parties agree Rule 54(d) applies. Neither party argues the rule is invalid.

No. 19-30791

Federal Rule of Civil Procedure 54(d) requires "[a] claim for attorney's fees . . . [to be] made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." Fed. R. Civ. P. 54(d)(2)(A). So what does MUTSA, the substantive law, say?

> If a claim of misappropriation is made in bad faith, a motion to terminate an injunction is made or resisted in bad faith, or willful and malicious misappropriation exists, *the court* may award reasonable attorney's fees to the prevailing party.

Mich. Comp. Laws § 445.1905 (emphasis added). No mention of a jury requirement. Even if willfulness and maliciousness must be found by a jury (as the jury found in Ridgeway's case), MUTSA leaves it to "the court" to award attorney's fees. *Ibid.* As the district court noted, "[t]he term court is synonymous with the judge or judges who sit on a tribunal." (Quotation omitted.)

MUTSA is therefore clear that a judge may award attorney's fees. "And where the statutory language provides a clear answer, [the analysis] ends there." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999).

2.

Or at least it should. Ridgeway relies on an unpublished Sixth Circuit decision for the proposition that "in order to obtain 'prevailing party' attorney's fees under Michigan law, a party must first present them to the trier of fact before trial." Blue Br. at 46 (citing *Dryvit Sys., Inc. v. Great Lakes Exteriors, Inc.*, 96 F. App'x 310, 311 (6th Cir. 2004)). Not so. *Dryvit* requires a party to *plead* attorney's fees when the claim for fees arises out of a " 'prevailing party' *contract* clause." *Dryvit*, 96 F. App'x at 311 (emphasis added); *see also id.* at 312 ("[T]he law requires [plaintiffs] to plead or lose attorney's fees."). That's because "[a]ttorney fees awarded under

6

contractual provisions are considered damages, not costs." *Cent. Transp., Inc. v. Fruehauf Corp.*, 362 N.W.2d 823, 829 (Mich. Ct. App. 1984).

The fees at issue here are statutory, not contractual. Still, even if plaintiffs plead an entitlement to attorney's fees arising out of a contract, Michigan law permits a judge, post-trial, to award those fees to a prevailing party. *See Roberts v. Saffell*, No. 312354, 2014 WL 2158159, at *6–7 (Mich. Ct. App. May 22, 2014) (per curiam). Therefore, Ridgeway has not shown that Michigan law requires statutory attorney's fees to be "proved at trial." FED. R. CIV. P. 54(d)(2)(A).

Ridgeway's position also finds no support in state court precedent. In the handful of cases involving MUTSA attorney's fees, Michigan state courts have raised no red flags over the practice of judges determining attorney's fees post-trial. *See, e.g.*, *Bearing360 LLC v. Cameron*, No. 330812, 2017 WL 3798491, at *3 (Mich. Ct. App. Aug. 31, 2017) (per curiam); *Whitesell Int'l Corp. v. Whitaker*, No. 287569, 2010 WL 3564841, at *19–20 (Mich. Ct. App. Sept. 14, 2010) (per curiam); *Facility Grp. of Mich., Inc. v. Off. Furniture Servs., Inc.*, No. 241139, 2003 WL 22872138, at *3 (Mich. Ct. App. Dec. 4, 2003) (per curiam). Granted, none of those cases directly address this issue. But it leaves Ridgeway without a basis to argue that we should depart from the clear text of MUTSA.

3.

To tie this all together: The federal rules leave it to the judge to determine attorney's fees "unless the substantive law requires those fees to be proved at trial as an element of damages." FED. R. CIV. P. 54(d)(2)(A). MUTSA empowers a "court"—meaning a judge—to award attorney's fees. So the relevant substantive law does *not* require "those fees to be proved at trial." *Ibid.* The federal rule controls. And the courts below were right to allow the bankruptcy court to award MUTSA attorney's fees.

No. 19-30791

B.

Next, the Common Core doctrine. Ridgeway raises a host of objections to the application of that doctrine in this case. But because the bankruptcy court acted within its discretion when it struck the objections, we need only discuss the court's decision to strike.

1.

Section 105(d) of the Bankruptcy Code permits the bankruptcy court to hold status conferences and issue orders "prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically." 11 U.S.C. § 105(d)(2).

The purpose of the April 6 status conference was just that—to narrow Ridgeway's objections. As the bankruptcy court put it, "[t]he idea . . . was to start focusing [and] narrowing the issues for trial just as an amended complaint and an answer and some discovery would do."

That made sense because Ridgeway's Common Core objections were broad—they included objections to *three* distinct types of billing entries:

1)  Entries that relate solely to non-MUTSA claims ("Category 1"). *See, e.g.*, Ex. J Pt. 1 p. 149 ("Review and analyze email memorandum from R. Marsh regarding breach of contract legal research.").

2)  Entries that bill for both MUTSA and non-MUTSA claims without indicating how much time was spent for each ("Category 2"). *See, e.g.*, Ex. J Pt. 1 p. 354 ("Research additional case law regarding breach of fiduciary duty and misappropriation of trade secrets while employed in preparation for arguments in anticipated motions for summary judgment against defendants.").

3)  Entries where it's unclear whether any MUTSA-related work was performed ("Category 3"). *See, e.g.*, Ex. J Pt. 1 p. 377

> ("Continue to prepare fact summary document in preparation
> for preparing motions for summary judgment.").

It would have expedited the bankruptcy court's resolution of the claims if Ridgeway had placed his objections into these three categories. *See* 11 U.S.C. § 105(d)(2). That way, if the court concluded that the Common Core doctrine did not apply, it could have decided each claim quickly: It could disallow the Category 1 claims their entirety because they contain no MUTSA work; it could allow the Category 2 claims but only for the MUTSA portion of the work; and it could require Stryker to indicate what, if any, Category 3 work related to MUTSA.

The April 7 order that followed the status conference sought to tease out these differences by requiring Ridgeway to "specify[] for each [time] entry [his] basis for claiming that [he] should not be liable." If, after compliance with the order, the court "concluded that Stryker was not entitled to claim the fees under the Common Core Doctrine," the court "could go through the time entries and accordingly allow or disallow amounts of the claim as appropriate. That was the gist of [the] order . . . ." In short, the terms of the April 7 order fell squarely within the bankruptcy court's power to expedite the case.

2.

Ridgeway didn't comply with that order. So the decision to strike the Common Core objections is best understood as a sanction. Just as the bankruptcy court had the authority to issue the April 7 order, so too could it punish Ridgeway for noncompliance.

The Bankruptcy Code "provides equitable powers for the bankruptcy court to use at its discretion." *In re Sadkin*, 36 F.3d at 478–79; *see* 11 U.S.C. § 105(a). This includes the power to sanction a party. *See Carroll v. Abide (In re Carroll)*, 850 F.3d 811, 816 (5th Cir. 2017); 2 Collier on

Bankruptcy ¶ 105.02[6][b] (16th ed. 2020) ("[Bankruptcy courts] may sanction attorneys or their clients for abuses of process and other harms. The ability to sanction may take the form of civil contempt, sanctions not otherwise authorized in the Code or Bankruptcy Rules[,] or general damages.").

The bankruptcy court's action here is akin to a Rule 37(b) sanction "striking pleadings in whole or in part" for violation of a discovery order. Fed. R. Civ. P. 37(b)(2)(A)(iii); *see also* Fed. R. Bankr. P. 7037 (incorporating Rule 37 into the Bankruptcy Rules). This sort of sanction is justifiable when there is willful misconduct and when lesser sanctions will not achieve the desired deterrent effect. *See Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488–89 (5th Cir. 2012); *Timms v. LZM, L.L.C.*, 657 F. App'x 228, 230 (5th Cir. 2016) (per curiam). Both criteria are satisfied in this case.

i.

First, willful misconduct. The bankruptcy court held its April 6 status conference with the "intent [of] narrowing the issues in dispute for trial." At the status conference, neither party objected to that effort. Accordingly, the April 7 order, in no uncertain terms, required Ridgeway to "file and serve . . . a list of time entries . . . that [he] contends are objectionable," along with the basis for those objections. The order "was extremely explicit" as to Ridgeway's obligations. Still, Ridgeway didn't comply.

When Stryker moved to strike the Common Core objections for violation of the April 7 order, Ridgeway had an opportunity to correct this mistake. Ridgeway chose instead to double down, insisting that the order was somehow unclear. The court set a hearing for July 5 to rule on the motion to strike. So if Ridgeway harbored any doubts about the meaning of the April 7

order—or if he found compliance too burdensome—he had months to request guidance or relief from the court before the hearing. He did nothing.

There's more. After the court struck the Common Core objections, Ridgeway asked the court to reconsider—and he was afforded a hearing on the issue in September. That gave him another couple of months to make it right. He didn't. Instead, his attorneys argued *again* that "we can interpret what we've already done as in compliance." The failure to abide by the terms of the April 7 order was intentional. The misconduct was willful.

Ridgeway offers three counterarguments. First, he claims that he did in fact comply with the order. In Ridgeway's view, his December 2016 objections to time entries that *only* contain MUTSA work satisfy his obligations under the April 7 order—because, by implication, he objected to every other time entry on Common Core grounds. That's incorrect. The April 7 order required "a list of time entries . . . that [Ridgeway] contends are *objectionable*," along with bases of objection, not a much smaller list of only those entries that are *unobjectionable*. Putting that problem aside, Ridgeway's argument ignores the context that led to the order. The bankruptcy court already had Ridgeway's list of unobjectionable MUTSA time entries. If that list had been sufficient, the April 7 order would have been redundant. But it wasn't. The list left the court unsure of what to do with the hundreds of other pages of time entries, some of which contained time billed for both MUTSA and non-MUTSA work (the Category 2 entries):

> Now, suppose I go with [Ridgeway] and I conclude that the Common Core Doctrine is inapplicable outside of the Civil Rights context or the other context that [Ridgeway has] cited, and therefore, disallow the recovery of any fees on the theory that Common Core does not apply. How do I figure out—how do I figure out what [Stryker is] entitled to?

Thus, Ridgeway's December 2016 objections complied with neither the text of the April 7 order nor the order's apparent purpose.

Second, Ridgeway asserts that compliance with the April 7 order was "impossible." *Cf. Dorsey v. Acad. Moving & Storage, Inc.*, 423 F.2d 858, 860 (5th Cir. 1970) (holding that severe sanctions are inappropriate when noncompliance is due to inability to comply). His attorneys apparently "[couldn't] tell from a time entry as to whether or not that [entry] involved Common Core." That's wrong too. As shown above, it's entirely possible to categorize the time entries based on whether they implicate the Common Core doctrine. It's a time-consuming activity, and it's certainly not fun. But a party's unwillingness to engage in unglamorous work does not make that work impossible. Even if it *had* been an impossible task, Ridgeway should have brought the issue to the bankruptcy court's attention, rather than ignore the order. He did not:

> [I]n the hearing that resulted in the [strike] order of August 29th you [Ridgeway's counsel] said, "You know we really can't do that [with the time entries] because it's all of them." And I said, "Well, wouldn't that have been a good thing for you to tell me on April 6th when I set up the scheduling order?" And I think you said, "Yes, I think it would have been."

Third, Ridgeway argues that his objections were proper because they "complied with Rule 3007 and the notice pleading requirements." That may be true, but it misses the point. The court struck Ridgeway's objections because he failed to comply with the April 7 order. So it doesn't matter that the objections were otherwise proper under the bankruptcy rules. *Cf. United States v. $49,000 Currency*, 330 F.3d 371, 375–76 (5th Cir. 2003) (holding that the sufficiency of an original pleading was irrelevant when the pleading was struck for noncompliance with a subsequent court order).

ii.

On to prong two of the test for striking a pleading: whether lesser sanctions were appropriate. *See $49,000 Currency*, 330 F.3d at 376. They were not. At the reconsideration rehearing, Ridgeway asked for a continuance to comply with the April 7 order. But, by then, Ridgeway had wasted months of the court's time. A continuance might have been appropriate in April or May 2017, but a continuance in July or September would only have rewarded Ridgeway's intransigence. And, as he did in the courts below, Ridgeway still incorrectly maintains that his original objections satisfy the April 7 order. So it's far from certain that a continuance would have resulted in compliance with that order.

Ridgeway has pointed to no lesser sanction that would have been appropriate for his violation of the April 7 order. The bankruptcy court's choice of sanction was therefore not an abuse of discretion. The court properly struck the Common Core objections. Thus, we need not reach their merits.

AFFIRMED.