[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-12569

_____

D.C. Docket No. 1:88-cr-00743-JEM-8

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HARLAN SALMONA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 8, 2016)

Before ED CARNES, Chief Judge, MARTIN, Circuit Judge, and THAPAR,[*]
District Judge.

ED CARNES, Chief Judge:

---

[*] Honorable Amul R. Thapar, United States District Judge for the Eastern District of
Kentucky, sitting by designation.

Not many people want to be locked up in a federal penitentiary serving a life sentence. Harlan Salmona does because it beats the alternative, which is being locked up in a state penitentiary that he believes is less safe. The problem for Salmona is that his life sentence was imposed by a Florida state court, not by a federal court. Salmona claims that because of a promise made to him by the United States Attorney's Office in a long ago plea agreement the federal government is required to get him transferred from state to federal custody for the remainder of his state sentence. This is his appeal from the district court's order denying his "Motion to Compel Compliance" with that plea agreement.

## I.

In a four-count superseding indictment issued in 1988, the federal government charged Salmona with crimes related to his involvement in a marijuana smuggling operation. When Salmona discovered that one of his codefendants had decided to cooperate with the government, he shot the man three times in the face with a .357 magnum, which had the unsurprising effect of killing him. As a result, the State of Florida indicted Salmona for first degree murder with a firearm, and he later struck a deal and pleaded guilty to second degree murder

2

with a firearm.  A Florida state court accepted his plea and imposed a life sentence in May 1989.

That same month, Salmona negotiated a plea agreement with the federal government in the marijuana smuggling case it had brought against him.  He apparently saw that deal as his ticket out of a Florida cell and into a federal one. He wanted to serve his state sentence in federal custody because he believed he would be in more danger in the state prison after the inmates there discovered he was cooperating with federal authorities.  As part of the federal deal Salmona agreed to "cooperate fully and completely" with law enforcement, which included giving "truthful statements" to law enforcement and truthful testimony before grand and petit juries.  The government agreed to give Salmona use immunity as to those statements.  In exchange for his truthful cooperation, the government also agreed that:  "The United States Attorney's Office will apply to admit Harlan Salmona into the federal witness protection program and will allow him to serve all of his Florida State sentence . . . in federal custody."

The federal plea agreement specified that if Salmona gave "false material statements" or testimony, the grant of use immunity would be "null and void," and the government could prosecute him for any crime and use any of his statements against him.  Nothing in the plea agreement specified whether the government was

3

limited to those remedies if Salmona breached the agreement by giving false testimony or otherwise.

Salmona received a 35-year federal sentence that ran concurrently with the life sentence he had received in the Florida state court. He began serving his state and federal sentences in a federal prison in 1989. The United States Attorney's Office had already submitted Salmona's name to the U.S. Marshals Service earlier that year for acceptance into the Witness Protection Program, but the Marshals had rejected it for reasons that are not disclosed in the record.

Salmona's testimony before a federal grand jury led to the indictment of an individual for several narcotics violations, and he also testified as a government witness at that person's trial (the jury acquitted him). The government discovered later that Salmona had "completely fabricated" his testimony before both the federal grand and petit juries. Salmona admitted that he had lied before the grand and petit juries. The government charged Salmona with four counts of perjury, two of which he pleaded guilty to in September 1991. In 1992, even though his original 35-year federal sentence had not expired, the government transferred Salmona from federal to state custody. Other inmates in state prison discovered his cooperation with federal authorities and assaulted him, prompting the prison to place him in protective custody.

4

Soon after his transfer to state prison, Salmona began his efforts to enforce the federal custody provision of his plea agreement. In 1992 he filed a motion to enforce that provision in the same federal district court that had accepted his plea agreement and sentenced him. Arguing that his perjury did not affect the enforceability of the federal custody provision, Salmona asserted that the government had violated that provision by refusing to submit his name to the Marshals Service so that it could determine his eligibility for the Witness Protection Program. The court ordered the government to submit his name to the Marshals. The government complied with that order, but the Marshals again rejected Salmona's application.

In early 1994 Salmona filed another motion to enforce the federal custody provision of the plea agreement, arguing that the government's failure to secure for him an interview by the Marshals violated the district court's 1992 order. The government opposed that motion, contending that it had complied with the court's order because it had submitted Salmona's name to the Marshals and that was all it was required to do. The court denied Salmona's motion.

Undeterred, in late 1994 Salmona filed another motion, this time one under 28 U.S.C. § 2255. It sought the same relief his earlier motions had. This time the government changed its position and filed in the district court a motion asking the

5

court to order Salmona's return to federal custody. The government acknowledged that its position had changed and pointed out that the 1989 plea agreement called for Salmona to serve his "concurrent sentences in federal custody." The district court granted the government's motion and Salmona was transferred to federal prison.

Salmona remained in federal custody until June 2011, when he completed his federal sentence.[1] He was then transferred into state custody, where he has been ever since serving his Florida sentence. In 2014, three years after he was transferred back into state custody, Salmona filed in the district court another "motion to compel compliance" with the plea agreement. The motion alleged that being incarcerated with state inmates threatened his safety. Salmona did not deny that he had breached the federal plea agreement, but asserted that the government's sole remedy for the breach was to void the grant of use immunity.

The district court denied Salmona's motion. It found that his perjury was a substantial breach of the plea agreement that released the government from its obligations. The court acknowledged that the plea agreement contained a "limited

---

[1] Salmona began serving his 35-year federal sentence in 1989, and completed that sentence in 2011. That is a total of 22 years. The record does not indicate how he was able to complete his federal sentence 13 years short of the 35 years to which he had been sentenced.

rescission clause" but found the lack of a "more robust rescission clause" immaterial in light of Salmona's substantial breach.

## II.

The first issue that we face is whether the district court had subject matter jurisdiction to decide Salmona's motion.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94, 118 S. Ct. 1003, 1012 (1998) (noting that subject matter jurisdiction is a threshold question).  Without subject matter jurisdiction, a court has no power to decide anything except that it lacks jurisdiction.  See Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999).  We raise the jurisdictional issue ourselves because we are obligated to do so.  Id.

It is Salmona's burden to establish the jurisdictional basis for his motion to compel compliance with the plea agreement.  See Kokkonen v. Guardian Life. Ins. Co. of Am., 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994).  Federal courts "are courts of limited jurisdiction" that "possess only that power authorized by Constitution and statute."  Id.  Like any other exercise of jurisdiction, a district court's jurisdiction to enforce a plea agreement must originate with the Constitution or a statute.  Bender v. Williamsport Area Sch. Dist., 475 U.S. 534,

7

541, 106 S. Ct. 1326, 1331 (1986); see also Kokkonen, 511 U.S. at 377, 114 S. Ct. at 1675 (noting that federal jurisdiction "is not to be expanded by judicial decree").

There is no apparent jurisdictional basis for Salmona's motion. He brought his motion under Federal Rule of Criminal Procedure 11(c), but that rule governs the procedures for negotiating plea agreements; it is not a grant of jurisdiction. His motion to compel was not an appeal from his earlier conviction, and even if it had been the district court is not an appellate court, so it had no appellate jurisdiction over the matter.

The best shot Salmona takes is 28 U.S.C. § 1361, which provides that district courts "shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." In his motion to compel, Salmona requested that "he be allowed to complete the service of his state-court sentence in federal custody consistent with the terms and promises in his plea agreement with the United States." Mot. Compel at 12; see also Appellant Br. at 26 (asking that we remand the case with instructions "to order [Salmona] transferred to federal custody forthwith"). We have granted a petition for a writ of mandamus where the plaintiff sought to force the government to adhere to a plea agreement's terms. In re Arnett, 804 F.2d 1200, 1201, 1204 (11th Cir. 1986). As we have recognized

8

before, however, In re Arnett "did not explicitly hold that the district court had jurisdiction over the defendant's motion to enforce a plea agreement." United States v. Al-Arian, 514 F.3d 1184, 1191 (11th Cir. 2008). It did not mention jurisdiction. When a decision decides the merits of a dispute without discussing jurisdiction, there is no jurisdictional holding that binds a later panel considering the jurisdictional issue. See Hagans v. Lavine, 415 U.S. 528, 533 n.5, 94 S. Ct. 1372, 1377 n.5 (1974) ("[W]hen questions of jurisdiction have been passed on in prior decisions sub silentio, this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us.").

Even if we assume that a district court potentially has jurisdiction to issue a writ of mandamus to enforce compliance with a plea agreement a quarter of a century after the agreement was entered, the existence of that jurisdiction would be dependent upon the petitioner satisfying the stringent requirements for the writ to issue. Those requirements are stringent because mandamus is a "drastic" remedy, "to be invoked only in extraordinary situations." Kerr v. U.S. Dist. Ct. for the N. Dist. of Cal., 426 U.S. 394, 402, 96 S. Ct. 2119, 2123 (1976); see also Cash v. Barnhart, 327 F.3d 1252, 1257 (11th Cir. 2003) ("Mandamus is an extraordinary remedy which should be utilized only in the clearest and most compelling of cases.") (quotation marks omitted).

9

Courts have discretion as to whether to issue a writ of mandamus. Cash, 327 F.3d at 1257–58. We have held, for better or worse, that the test for mandamus jurisdiction is "whether mandamus would be an appropriate means of relief." Id. at 1258 (quotation marks omitted). Mandamus relief is appropriate only when: (1) there is no other adequate remedy and (2) the "plaintiff has a clear right to the relief requested" (in other words, the defendant must have "a clear duty to act"). Id. In other words, "a writ of mandamus is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." Id. (quotation marks omitted).

Even assuming that Salmona satisfies the first requirement for issuance of a writ of mandamus, he does not satisfy the second one. He has no clear right to relief. He has not shown that his right to relief is "indisputable." Kerr, 426 U.S. at 403, 96 S. Ct. at 2124. His claimed right to the requested relief is disputable because Salmona violated his promise in the agreement to make "truthful statements before grand juries and petit juries." He admitted to fabricating his testimony before federal grand and petit juries, and he was convicted of perjury for doing so. To state the obvious, by committing perjury Salmona substantially breached his promise to provide truthful testimony, which was a key provision of the agreement. See United States v. Wood, 780 F.2d 929, 929–32 (11th Cir. 1986)

10

(holding that a defendant's failure to tell law enforcement about certain drug activities "amounted to a substantial breach" of his plea agreement, which required him to "fully and truthfully disclose to law enforcement everything that he [knew]" about those activities).  A defendant's substantial breach of a plea agreement generally frees the government from its obligations under the agreement.  See United States v. Kelly, 337 F.3d 897, 901 (7th Cir. 2003) ("In general, a defendant's substantial breach of an unambiguous term of a plea agreement frees the government to rescind the deal.").

What is less clear — or more to the point, disputable — is whether Salmona's substantial breach freed the government from all of its obligations under this particular plea agreement, which specified that if Salmona did not provide truthful testimony the government's promise of use immunity would be null and void.  Salmona argues that provision should be interpreted to mean that voiding the grant of use immunity is the sole remedy the government has for his breach by perjury.  He may be right.  See United States v. Fitch, 964 F.2d 571, 576 (6th Cir. 1992) (stating that a provision in an immunity agreement allowing the government to prosecute the defendant for perjury was the government's sole remedy for his breach).  Or he may be wrong.  See United States v. Cimino, 381 F.3d 124, 129 & n.4 (2d Cir. 2004) (stating that the remedies available "following a [substantial]

11

breach of [a plea agreement's] express terms" are supplied "by general principles of contract law," which include the right of the government to rescind or cancel the entire plea agreement); see also Ron Matusalem & Matusa of Fla., Inc. v. Ron Matusalem, Inc., 872 F.2d 1547, 1551 (11th Cir. 1989) ("It is an established principle of contract law that an injured party may terminate a contract for breach . . . if the breach is [substantial].") (quotation marks omitted).[2]  Because we have never decided the issue and there is enough reason to go either way on it, Salmona's right to relief is disputable at best, and that is not good enough for mandamus jurisdiction.  Kerr, 426 U.S. at 403, 96 S. Ct. at 2124.[3]

Because the district court lacked subject matter jurisdiction over Salmona's claim, its judgment is **VACATED** and the case is **REMANDED** with instructions to dismiss for lack of jurisdiction.

---

[2] We interpret plea agreements "in a manner that is sometimes likened to contractual interpretation." United States v. Jeffries, 908 F.2d 1520, 1523 (11th Cir. 1990).

[3] Salmona presents two other arguments as to why his perjury does not excuse the government from complying with the federal custody provision of the agreement.  He argues that judicial estoppel bars the government from asserting that his perjury releases the government from its obligations under the federal custody provision, because it allegedly took a different position in 1995.  He also argues that because the government has never before tried to cancel the whole plea agreement, it has either ratified the federal custody provision or waived any argument that it can cancel the entire agreement.  Salmona does not provide, and we have not found, any binding authority establishing that he is indisputably entitled to relief under either of those two theories, so neither one suffices for mandamus jurisdiction.  See Kerr, 426 U.S. at 403, 96 S. Ct. at 2124.

MARTIN, Circuit Judge, concurring:

I agree with the analysis of Part II of the Majority opinion, which leads me to the conclusion that Mr. Salmona is not entitled to relief.  Mr. Salmona materially breached the plea agreement he seeks to enforce, so the government may be entitled to rescind it.  Mandamus jurisdiction is not therefore warranted here. Unlike in the Arnett case relied upon by Mr. Salmona, he has no clear right to the requested relief.  I join the Majority in VACATING and REMANDING with instructions to dismiss for lack of jurisdiction.