[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14417
_____

D.C. Docket No. 1:13-cv-21697-JAL

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

TWENTY-NINE PRE-COLUMBIAN AND COLONIAL ARTIFACTS FROM
PERU, et al.,

Defendants,

JEAN COMBE-FRITZ,

Claimant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 2, 2017)

Before HULL, MARCUS, and CLEVENGER,[*] Circuit Judges.

PER CURIAM:

Jean Combe-Fritz appeals from the district court's final judgment of forfeiture of a number of artifacts confiscated from him by U.S. Customs and Border Protection ("CBP") when he arrived at Miami International Airport from Peru.  CBP seized the items pursuant to both the Convention on Cultural Property Implementation Act ("CPIA"), 19 U.S.C. §§ 2601–13, which limits the importation of "archaeological and ethnological material" of a foreign State Party; and 19 U.S.C. § 1595a(c), which restricts the importation of items "contrary to law." Upon review of the record, and with the benefit of oral argument from counsel for the parties, we affirm.

## I.  FACTS & PROCEDURAL HISTORY

Mr. Combe-Fritz, a Peruvian citizen, arrived at Miami International Airport from Lima, Peru, on August 21, 2010.  During Mr. Combe-Fritz's secondary screening examination, CBP officers identified a number of items—various textiles, figurines, and other articles—that were deemed to require further evaluation from an import specialist.  CBP confiscated the items and issued a Detention Notice and Custody Receipt to Mr. Combe-Fritz.   He returned to Peru shortly thereafter.

---

[*] The Honorable Raymond C. Clevenger, United States Circuit Judge for the Federal Circuit, sitting by designation.

2

On February 15, 2012, CBP issued Mr. Combe-Fritz and his counsel two separate notices of seizure and possible forfeiture of the seized items.  One of the notices stated that some of the confiscated items were "Archaeological and Ethnological Material from Peru," seized pursuant to 19 U.S.C § 2609 and 19 C.F.R. § 12.104e, and subject to summary forfeiture proceedings.  The second notice indicated that other items were "stolen cultural property from Peru" and, therefore, were seized and subject to forfeiture under 19 U.S.C. § 1595a(c)(1)(A).  Mr. Combe-Fritz submitted a claim of interest for the seized items and paid the requisite bond, and CBP referred the case to the U.S. Attorney's office ("the government") to initiate judicial forfeiture proceedings.  See 19 U.S.C. § 1608.

On May 10, 2013, the government filed a complaint ("first complaint") for civil forfeiture in rem against "twenty-nine pre-Columbian and Colonial artifacts from Peru," pursuant to 19 U.S.C. § 2609, part of the CPIA.  The first complaint alleged that Dr. Carol Damian, an expert in Latin American and Pre-Columbian art," had reviewed the seized items and opined that twenty-nine of them "appear[ed] to be designated archeological and ethnological material," the importation of which is limited under the CPIA.[1]  It also alleged that Luis Chang, Minister Counselor of the Embassy of Peru, had reviewed photographs of the

---

[1] The Fourth Circuit's case Ancient Coin Collectors Guild v. U.S. Customs & Border Prot., Dep't of Homeland Sec., 698 F.3d 171, 175–77 (4th Cir. 2012), provides a concise overview of the CPIA and its history.

twenty-nine items and, like Dr. Damian, believed them to be protected articles of Peruvian cultural heritage, exported without authorization from the government of Peru.

On July 19, 2013, the government filed a second complaint ("second complaint") for civil forfeiture in rem against "Three Artifacts Constituting Cultural Property from Peru," pursuant to 19 U.S.C. § 1595a(c)(1)(A).[2] The second complaint alleged that three of the seized items (not included in the first complaint) were Peruvian cultural property, and, under Peruvian law, the unauthorized exportation of the defendant property caused ownership of the items to revert to the government of Peru. As with the first complaint, the second complaint alleged that Luis Chang had reviewed the three items and believed them to be the cultural property of Peru, exported without the government's permission. Consequently, the government's second complaint alleged that "the removal of the defendant property from Peru was illegal; ownership of the property had reverted to the people of Peru; and the three artifacts constitute property stolen, smuggled or clandestinely imported into the United States."

Mr. Combe-Fritz filed verified claims of interest in response to each of the government's complaints, and the district court consolidated the cases. On

---

[2] "Merchandise which is introduced or attempted to be introduced into the United States contrary to law shall be treated as follows: (1) The merchandise shall be seized and forfeited if it—(A) is stolen, smuggled, or clandestinely imported or introduced . . . ." 19 U.S.C. § 1595a(c)(1)(A).

4

September 16, 2013, Mr. Combe-Fritz filed a motion to dismiss the consolidated forfeiture action, arguing that (1) the district court lacked jurisdiction because the Court of International Trade ("CIT") possessed exclusive jurisdiction over the case, (2) CBP's procedures prior to referring the case to the U.S. Attorney did not comport with due process, and (3) the government failed to state a claim in its complaints.

While the motion to dismiss was pending, the district entered a scheduling order setting discovery deadlines. The government noticed Mr. Combe-Fritz's deposition for March 13, 2014. Mr. Combe-Fritz moved to stay discovery until the district court ruled on his motion to dismiss, but the magistrate judge denied the stay motion, ordering that the parties proceed with discovery and that Mr. Combe-Fritz's deposition "go forward at this time." The parties repeatedly attempted to reschedule the deposition, but Mr. Combe-Fritz ultimately cancelled agreed-upon dates on three occasions, citing concerns that he could be arrested while in the United States because he had not received a U.S. visa to travel from Peru. The government noticed Mr. Combe-Fritz's deposition for June 12, 2014, and filed a motion to compel his attendance. At the hearing regarding the government's motion to compel, Mr. Combe-Fritz's counsel explained that his client had received a visa and would attend the June 12 deposition voluntarily.

5

On June 6, 2014, the government emailed Mr. Combe-Fritz's attorney to review some logistical matters regarding the upcoming deposition, including advising that counsel explain Mr. Combe-Fritz's Fifth Amendment privilege to him ahead of time, in order to avoid confusion and delay.  Consequently, Mr. Combe-Fritz insisted that the government grant him immunity or agree to a protective order.  The government refused, and the scheduled June 12 deposition was postponed to June 30, but Mr. Combe-Fritz did not appear for his deposition on this date.

Mr. Combe-Fritz filed three motions on July 3, 2014.  First, Mr. Combe-Fritz filed a motion for a protective order and immunity, seeking limitations on the use of his deposition testimony and any documents relating thereto.  Second, Mr. Combe-Fritz filed a motion to stay forfeiture proceedings until the resolution of any criminal inquiry against him.  Third, Mr. Combe-Fritz filed a motion to amend the scheduling order, either by reassigning the case to the "Complex Track," under Southern District of Florida Local Rule 16.1(a)(2), (3), or by extending the discovery deadline.

On August 6 and 7, 2014, the district court denied Mr. Combe-Fritz's motion to stay without prejudice, finding his Fifth Amendment concerns "too speculative and hypothetical," and denied his motion to amend the scheduling order.  The magistrate judge, however, granted Mr. Combe-Fritz a partial

protective order, concluding that, despite the government's representations that there was no federal criminal investigation pending against him, Mr. Combe-Fritz's concerns were "not entirely without merit and [could not] be entirely discounted."  Therefore, although finding that the "purported grounds for protective order are largely speculative, conclusory, and vague," the magistrate judge ordered that Mr. Combe-Fritz's deposition testimony and other produced documents "may be used only in connection with this case" and were not to be used in any potential criminal investigation.  The magistrate judge did not otherwise limit the government's conduct of discovery or require the government to confer immunity to Mr. Combe-Fritz.

On September 11, 2014, the district court denied Mr. Combe-Fritz's motion to dismiss, filed in September 2013.  The district court concluded that the CIT did not possess exclusive jurisdiction over the matter, that CBP had complied with its due process obligations, and that the government had adequately stated a claim in both of its complaints.

On December 17, 2014, the government moved in limine to preclude Mr. Combe-Fritz from testifying at trial, in light of his refusal to sit for his deposition. On January 16, 2015, the government additionally filed a motion for sanctions "up to and including dismissal of [Mr. Combe-Fritz's] claim" for discovery misconduct.  The magistrate judge granted the motion in limine on February 3,

7

2015, ordering: "[Mr. Combe-Fritz] must appear for his deposition within ten days of this Order, or he will be excluded from testifying at trial." The magistrate judge declined to grant the government's motion for additional sanctions. Mr. Combe-Fritz did not appear for his deposition within ten days of the magistrate judge's order.

On April 2, 2015, the district court sua sponte issued an order to show cause why it should not strike Mr. Combe-Fritz's claims of interest with prejudice. The district court recited Mr. Combe-Fritz's repeated failures to sit for his deposition, the lesser sanctions that had already been considered and applied, and Mr. Combe-Fritz's lack of evidence to establish his own standing. The district court specifically addressed Mr. Combe-Fritz's self-incrimination concerns:

> To the extent that [Mr. Combe-Fritz] has avoided appearing for his deposition based on a Fifth Amendment concern that answers to deposition questions might tend to incriminate him, this would not give him the right to simply not appear at all for a deposition. Instead it would give him the ability to assert his Fifth Amendment privilege on a question-by-question basis at the deposition. Claimant cannot simply refuse to even appear for a deposition based on a fear, even if legitimate, of criminal prosecution based on his deposition testimony.

On May 15, 2015, following responses from both parties, the district court explained that Mr. Combe-Fritz had "continuously disregarded his discovery obligations as a party in this case" and that his "complete failure to actively engage in the discovery process ha[d] prejudiced [the government's] ability to pursue this

8

litigation." Accordingly, the district court ordered Mr. Combe-Fritz to sit for deposition in Miami within thirty days (June 15, 2015) or face dismissal of his claims. On June 11, 2015, Mr. Combe-Fritz filed a motion for reconsideration of the court's order compelling his deposition. In the motion, he argued that appearing for deposition would be a "waste of judicial resources" because he would be invoking his Fifth Amendment privilege and that the district court's order was "unnecessary." Mr. Combe-Fritz did not appear for his deposition on or before June 15, 2015.

On August 4, 2015, the district court denied Mr. Combe-Fritz's motion for reconsideration and found that he had willfully frustrated the discovery process and failed to comply with direct court orders—therefore, as a sanction for his discovery abuses, the district court struck and dismissed his claims of interest with prejudice, pursuant to Federal Rule of Civil Procedure 37. The district court explained that the severe sanction was "warranted to ensure the integrity of the discovery process and the administration of justice."

The government moved for final judgment of forfeiture on August 14, 2015. The court granted the motion and entered final judgment on August 24, 2015. Later the same day, Mr. Combe-Fritz filed a response to the government's motion for final judgment and, because the court had already granted the motion, also requested that the entry of judgment be vacated. The court summarily denied the

9

request.  Mr. Combe-Fritz moved for reconsideration, which the court also denied on the grounds that he was no longer a party to the case.

This appeal followed.

## II.  DISCUSSION

Mr. Combe-Fritz raises a host of complaints regarding the district court's rulings.  As an initial matter, Mr. Combe-Fritz contends that the district court lacked subject matter jurisdiction over the action in its entirety because exclusive jurisdiction lay with the CIT.  Additionally, Mr. Combe-Fritz raises challenges to both CBP's procedures and the district court's conduct of the forfeiture litigation— including the striking of his claims of interest, which resulted in the ultimate judgment of forfeiture.  We discuss these issues in turn.

### A.  Subject Matter Jurisdiction

We are obligated to consider, as a threshold inquiry, whether subject matter jurisdiction properly lay with the district court.  See United States v. Salmona, 810 F.3d 806, 810 (11th Cir. 2016) ("Without subject matter jurisdiction, a court has no power to decide anything except that it lacks jurisdiction.").  Questions concerning a district court's exercise of subject matter jurisdiction are reviewed de novo. Mesa Valderrama v. United States, 417 F.3d 1189, 1194 (11th Cir. 2005).

As a general rule, the federal district courts possess original jurisdiction over forfeiture proceedings, "except matters within the jurisdiction of the [CIT] under

10

section 1582 of this title."[3]  28 U.S.C. § 1355(a).  Mr. Combe-Fritz contends that the CIT possessed exclusive jurisdiction over the CPIA-based forfeiture, not as a result of § 1582 but, rather, according to § 1581.  Under 28 U.S.C. § 1581(i), the CIT "shall have exclusive jurisdiction of any civil action <u>commenced against the</u> <u>United States</u> . . . that arises out of any law of the United States providing for . . . (3) embargoes or other quantitative restrictions on the importation of merchandise; or (4) administration and enforcement" of such an embargo or quantitative restriction.  28 U.S.C. § 1581(i)(3), (4) (emphasis added).  Mr. Combe-Fritz argues that the CPIA effectively creates an embargo by restricting the importation into the United States of certain foreign goods.

We need not reach the question of whether the CPIA in fact creates an embargo as recognized by § 1581(i)(3) because we agree with the district court that the government's <u>in rem</u> forfeiture action cannot be characterized as a "civil action commenced against the United States," a necessary precondition under the statute. 28 U.S.C. § 1581(i).  Regardless of his belief that it is legal fiction to label the twenty-nine items seized under the CPIA as "guilty property," Mr. Combe-Fritz cannot overcome the plain fact that the instant forfeiture proceedings were

---

[3] "The [CIT] shall have exclusive jurisdiction of any civil action which arises out of an import transaction and which is commenced by the United States—(1) to recover a civil penalty under section 592, 593A, 641(b)(6), 641(d)(2)(A), 704(i)(2), or 734(i)(2) of the Tariff Act of 1930; (2) to recover upon a bond relating to the importation of merchandise required by the laws of the United States or by the Secretary of the Treasury; or (3) to recover customs duties." 28 U.S.C. § 1582.

commenced <u>by</u> the United States, against the defendant property.  See <u>United States v. One-Sixth Share,</u> 326 F.3d 36, 40 (1st Cir. 2003) ("Because civil forfeiture is an in rem proceeding, the property subject to forfeiture is the defendant. Thus, defenses against the forfeiture can be brought only by third parties, who must intervene.").  This was not a case "commenced against the United States."

Therefore, the general rule that district courts have original jurisdiction over forfeiture proceedings brought by the government is properly applied in this case.

*B.  Rule 37 Sanctions*

District courts have broad authority and discretion to fashion sanctions against parties who fail to engage in discovery (<u>e.g.</u>, a party's failure to attend its own deposition) or otherwise disobey court orders.  See Fed. R. Civ. P. 37(b), (d). Such sanctions include "striking pleadings in whole or in part" or "rendering a default judgment against the disobedient party."  Fed. R. Civ. P. 37(b)(2)(A); <u>see also</u> <u>Buchanan v. Bowman</u>, 820 F.2d 359, 361 (11th Cir. 1987).  We have recognized, however, that "[t]he decision to dismiss a claim or enter default judgment 'ought to be a last resort—ordered only if noncompliance with discovery orders is due to willful or bad faith disregard for those orders.'" <u>United States v. Certain Real Prop. Located at Route 1, Bryant, Ala.</u>, 126 F.3d 1314, 1317 (11th Cir. 1997) (quoting <u>Cox v. Am. Cast Iron Pipe Co.</u>, 784 F.2d 1546, 1556 (11th Cir.

12

1986)).  We review the district's court imposition of sanctions for abuse of discretion.  Betty K Agencies, Ltd. v. M/V MONADA, 432 F.3d 1333, 1337 (11th Cir. 2005).

Based on the procedural history recited above, we cannot say that the district court abused its discretion in striking and dismissing Mr. Combe-Fritz's claims of interest.  See Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc., 420 F.3d 1317, 1325 (11th Cir. 2005) ("[W]hen employing an abuse of discretion standard, we will leave undisturbed a district court's ruling unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard.").  The facts show that, over the course of more than a year, Mr. Combe-Fritz consistently shirked his obligation to appear for his deposition, depriving the government of a meaningful opportunity to explore his claims of interest.  Despite having both the government's assurances that there was no federal criminal investigation pending against him and a limited protective order from the magistrate judge, Mr. Combe-Fritz continued to cite hypothetical self-incrimination concerns as his only reason for not appearing.  This was unavailing.

In addition to attempts to accommodate Mr. Combe-Fritz's Fifth Amendment concerns, the district court and magistrate judge repeatedly gave Mr. Combe-Fritz chances to avoid dismissal, exhausting other, less severe sanctions. In response to the government's motion in limine and motion for sanctions, the

13

magistrate judge ordered that "[Mr. Combe-Fritz] must appear for his deposition within ten days of this Order, or he will be excluded from testifying at trial." The threat of this lesser sanction was not sufficient, and Mr. Combe-Fritz ignored it.

Then, following its order to show cause why the court should not strike Mr. Combe-Fritz's claims of interest, the district court issued an order compelling his deposition within thirty days, providing him a final opportunity to cure his discovery misconduct. Following well-established law, the district court specifically explained that Mr. Combe-Fritz could not rely on his Fifth Amendment concerns, even if legitimate, to avoid being deposed. See United States v. Roundtree, 420 F.2d 845, 852 (5th Cir. 1969) ("[E]ven if the danger of self-incrimination is great, [a party's] remedy is not to voice a blanket refusal to produce his records or to testify. Instead, he must present himself with his records for questioning, and as to each question and each record elect to raise or not to raise the defense. . . . [A] blanket refusal is unacceptable . . . ." (internal footnote omitted)).[4] And the district court warned that, should Mr. Combe-Fritz fail to appear within thirty days, "it may be grounds for dismissal of his claim."

As we have already noted, Mr. Combe-Fritz did not sit for his deposition within the thirty-day deadline. Instead he chose to file a motion for reconsideration, in which he again asserted an improper "blanket refusal" to sit in

---

[4] This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. See Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981).

light of his self-incrimination concerns and argued that requiring his deposition would be a "waste of judicial resources." Consequently, the district court determined that, "[w]hile the issue of whether [Mr. Combe-Fritz] had actually violated a specific Court discovery order may have been at one time 'at least slightly, ambiguous,' that is no longer the case. Claimant has willfully violated the Court's Order to Compel and is solely at fault for the violation."

Mr. Combe-Fritz's conduct went beyond simple negligence, misunderstanding, or an inability to comply with court orders. The record amply supports the district court's conclusion that Mr. Combe-Fritz's "failure to appear on several occasions for his deposition was willful and in bad faith." As such, we see no abuse of discretion in the district court's order striking and dismissing Mr. Combe-Fritz's claims of interest.

Moreover, because the district court acted within its discretion in striking Mr. Combe-Fritz's claims, we need not address Mr. Combe-Fritz's remaining challenges, both to CBP's procedures and to the district court's numerous other rulings. See, e.g., United States v. $239,500 in U.S. Currency, 764 F.2d 771, 773 (11th Cir. 1985) (holding that the district court's Rule 37 dismissal, resulting in dismissal of the claimant's claims in a forfeiture action, "left no issue before the court as to the forfeiture and left [claimants] without standing to contest the merits of the Government's claim."); United States v. $49,000 Currency, 330 F.3d 371,

15

375–76 (5th Cir. 2003) (holding that the district court's Rule 37 sanction, resulting in default judgment against claimant, was proper and "dispositive," making further inquiry into other issues raised on appeal unnecessary).

The district court's entry of final judgment of forfeiture in the consolidated forfeiture action is therefore affirmed.

**AFFIRMED.**